A89A1527. ARCHER MOTOR COMPANY, INC. v. INTERNATIONAL BUSINESS INVESTMENTS, INC.
(386 SE2d 918)

SOGNIER, Judge.

International Business Investments, Inc. (International) brought suit against Archer Motor Company, Inc. (Archer) to recover a brokerage commission for the sale of real property to which it alleged entitlement under an exclusive business brokerage agreement. In its answer, Archer alleged that the agreement did not contemplate the sale of the realty. In *Intl. Business &c. v. Archer Motor Co., Inc.*, 187 Ga. App. 97 (369 SE2d 268) (1988), this court reversed the trial court's grant of summary judgment in favor of Archer, holding that after applying the pertinent rules of construction, "an ambiguity does exist as to whether, or not, the real property was to be included along with the other components of defendant's used car business under the terms of the listing agreement," id. at 99, and that the issue must be submitted to a jury. At trial the jury returned a verdict for International. Archer appeals from the denial of its motions for judgment notwithstanding the verdict and for a new trial.

Viewed in the light most favorable to the verdict, the evidence adduced at trial showed that on May 27, 1986, appellant's then president and sole shareholder, Robert L. Archer, entered into a brokerage agreement with appellee for the sale of his used car business. The business consisted of two used car lots, one in Morrow and one in Griffin. Under the terms of the agreement, appellee was granted the "sole, exclusive and irrevocable right to sell, exchange, lease or otherwise dispose of the . . . business, assets, rights and property or any portion thereof . . . for the price and on the payment terms set forth above or for any other price and payment terms acceptable to Seller." Although no value was indicated for the real property in the section stating "[o]nly the assets for which values are indicated below are included for sale under this agreement," both a minimum price and terms acceptable to appellant for sale of the real estate were included

in that portion of the agreement which also set forth a minimum price and terms for the business assets. A previous contract, which was similar but which unambiguously and without dispute excluded the real estate, had expired under its own terms.

In December 1986, during the term of the second contract, appellant merged its Morrow business location with the one in Griffin, and, using a different agent, sold the Morrow real estate to a third party. Robert L. Archer died after the occurrence of the events which form the subject matter of this suit.

1. Appellant contends the trial court erred by denying its motion for j.n.o.v. because the corporate resolution which authorized its president to sell the going business did not permit the corporation to enter into an exclusive brokerage contract. There is no merit in this contention. " 'In reviewing the overruling of motions for . . . judgment n.o.v., the appropriate standard to be utilized is the any evidence test. (Cits.)' [Cit.]" *Orkin Exterminating Co. v. Flowers*, 187 Ga. App. 270, 271 (1) (370 SE2d 29) (1988). The corporate resolution in question provided that Robert L. Archer, its president, was vested "with full and complete authority, to perform any necessary act to grant to [appellee] the authorization to list for sale, lease or exchange certain assets (as further defined in the Broker Agreement) of said Corporation." The corporate resolution makes no reference to the specific issue of whether Archer could enter into an exclusive brokerage agreement covering the realty. We do not agree with appellant that the absence of language expressly permitting Archer to enter into such an agreement on appellant's behalf requires that the resolution be construed as implicitly excluding such authority. We need not address appellant's arguments rebutting appellee's assertion that the above language unambiguously authorized Archer to enter into the exclusive brokerage agreement, however, since even assuming, arguendo, that the resolution language was ambiguous, there was evidence that the corporate resolution authorized an exclusive brokerage agreement. The brokerage agreement which Archer signed as appellant's president defines the listing as exclusive. Appellant's corporate secretary testified that Archer and she had read the agreement and admitted that no action was taken by the corporation to change or cancel the agreement. The secretary further conceded that appellant was not contesting the exclusive nature of the brokerage agreement as to the business assets, although it was executed pursuant to the same resolution. Some evidence having been introduced authorizing the jury to find that the resolution authorized the agreement, we find no error in the trial court's denial of appellant's motion for j.n.o.v. See *Davis v. Glaze*, 182 Ga. App. 18, 19-20 (1) (354 SE2d 845) (1987).

2. Appellant contends the trial court erred by denying its motion for a new trial made on the general grounds, arguing that the agree-

ment unambiguously excluded the realty. We cannot agree with appellant's argument in view of this court's holding in *Intl. Business &c.*, supra at 99, that after applying the applicable rules for construing contracts, an ambiguity remained with regard to whether the real property was to be included. "[A]ny ruling by the . . . Court of Appeals in a case shall be binding in all subsequent proceedings in that case in the lower court and in the . . . Court of Appeals . . . ." OCGA § 9-11-60 (h).

Although the evidence was conflicting as to the intentions of the parties, appellee's president, Frank Glunn, testified that omitting a valuation for real estate at the beginning of the contract was the usual method of filling out the forms; that he had been instructed to complete them that way by the designer of the forms; and that the later inclusion of a minimum price and terms for the sales of the real estate indicated that the realty was included. This evidence authorized the jury to find that the parties intended to include the real estate in the exclusive brokerage contract. " 'This court will not disturb a judgment when there is any evidence to sustain it, in the absence of a material error of law. [Cit.] If the verdict is wholly without supporting evidence, it will be set aside, but where the evidence is in conflict and a properly instructed jury resolves the conflicts against [one party], and that decision is approved by the trial judge and is supported by the evidence of record, this court, in the absence of material errors of law, will affirm. [Cit.]' [Cit.]" *Spears v. Mires*, 187 Ga. App. 656, 658 (3) (371 SE2d 122) (1988). Accordingly, the trial court did not err by denying appellant's motion for a new trial. See id.

3. Appellant enumerates as error the admission, over objection, of certain real estate licenses and the failure of appellee to prove it had a proper license, a prerequisite to recovery of brokerage commissions under OCGA § 43-40-24. We find no merit in this enumeration. Glunn testified that appellee was properly licensed as a corporate real estate broker during the time in issue. Where a regulated business is required to prove that it is licensed in order to maintain an action for debt, the best evidence rule does not require that the actual licensing document be entered into evidence, and the testimony of an agent of the company is sufficient proof of licensing. *Merrill Lynch &c. Smith v. Zimmerman*, 248 Ga. 580 (285 SE2d 181) (1981). Thus the documentary evidence was not necessary to prove licensure, and we need not consider whether it was properly admitted. It is an old and sound rule that error to be reversible must be harmful. *Leverett v. Flint Fuel*, 183 Ga. App. 75, 78 (3) (357 SE2d 882) (1987).

4. Appellant maintains the trial court erred by admitting appellee's exhibit 13 as a business record. Exhibit 13 was a series of documents offered by appellee to demonstrate and substantiate the efforts expended by Glunn in carrying out the terms of the contract. Each

document in the exhibit recorded a contact made by Glunn with a prospective purchaser. Glunn testified that although these individual documents were not kept together by the business as one record, each of the documents was made in the regular course of business by Glunn at or near the time of the contact and was kept as a business record. Glunn then compiled the documents into exhibit 13. "Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event shall be admissible in evidence in proof of the act, transaction, occurrence, or event, if the trial judge shall find that it was made in the regular course of any business and that it was the regular course of such business to make the memorandum or record at the time of the act, transaction, occurrence, or event or within a reasonable time thereafter." OCGA § 24-3-14 (b). A proper foundation having been laid for the admission of the documents comprising exhibit, the fact that the admissible documents were offered as a group rather than individually was no ground to exclude the exhibit as a whole.

5. Appellant contends the trial court erred by sustaining appellee's parol evidence objection to the question posed to appellant's corporate secretary, Betty Archer, regarding what the corporate resolution encompassed. The trial court sustained the objection on the ground that the resolution would speak for itself, a ruling we find correct pursuant to OCGA § 24-6-1 since what the resolution "encompassed" would be clear from the face of the resolution, and thus an answer to the question in issue would either add nothing or impermissibly infringe upon the parol evidence rule's prohibition against oral testimony contradicting or varying the terms of a written instrument. We intimate nothing as to whether it would have been error to refuse to allow the witness to answer had the question been rephrased to ask for the secretary's understanding of the corporation's *intention* in passing the resolution.

6. Appellant contends the trial court erred by charging the jury that "the intentions of the parties may differ amongst themselves. In such cases, the meaning placed on the contract by one party and known to be thus understood by the other party at [the] time shall be held as the true meaning." Appellant does not contend the charge is an incorrect statement of the law. Rather, appellant asserts that because the charge was not couched in the alternative, it may have misled the jury into believing that in fact there existed an understanding of the meaning of the contract common to both parties, when that was the ultimate question for the jury. We do not agree. The charge was given in the exact language of OCGA § 13-2-4, and we find nothing in it to confuse or mislead the jury. "[T]he standard remains that all that is required is a charge sufficiently clear to be understood by

jurors of ordinary capacity and understanding. [Cit.]" *Allison v. Keller Indus.*, 186 Ga. App. 175, 176 (1) (367 SE2d 70) (1988). Viewing the charge as a whole, we find that it conveyed to the jury that it was to decide what the intentions of the parties were, and whether those intentions coincided. Accordingly, we find no error in the trial court's charge.

*Judgment affirmed. Banke, P. J., and Pope, J., concur.*

DECIDED SEPTEMBER 29, 1989.

*Howard P. Wallace*, for appellant.

*McLain & Merritt, M. David Merritt, Albert J. Decusati*, for appellee.