A04A2169. FELLOWS et al. v. ALL STAR, INC.
(612 SE2d 86)

BARNES, Judge.

Shawn Fellows and David Awtrey appeal the trial court's judgment, entered after a jury verdict, in favor of All Star, Inc., in All Star's action to enforce noncompete clauses Fellows and Awtrey signed during the course of their employment with All Star. All Star also sought damages resulting from the breach of those agreements and for certain torts allegedly committed by Fellows and Awtrey. They

---

contend the trial court erred by failing to rule that the noncompete agreements were unenforceable, by submitting the noncompete agreements to the jury for interpretation, by admitting the noncompete agreements in evidence over their objections, by treating multiple corporations as a single corporation, by refusing to give one of their jury charges, and by denying their motions in limine, for a directed verdict, and for judgment notwithstanding the verdict. Fellows and Awtrey also contend the verdict is contrary to the evidence. For the reasons that follow, we reverse the trial court's judgment.

Viewed most favorably in support of the verdict, the evidence shows that Fellows and Awtrey worked for All Star and for a subsidiary, Alabama Amusements. All Star is a company providing video gaming machines to businesses in Georgia, Alabama, and Texas. At some point, Fellows and Awtrey decided to end their employment with All Star and establish their own business in competition with All Star. Thereafter, All Star filed a petition seeking an injunction to enforce the noncompete agreements that Fellows and Awtrey signed. After the trial court denied All Star's request for an injunction, the case proceeded to trial on All Star's claim for damages for violation of the noncompete agreements and All Star's tort claims.

Before trial, Fellows and Awtrey did not file motions for summary judgment contesting the enforceability of the noncompete agreements. Instead shortly before trial, they filed a motion in limine. Among other things, they asserted that the noncompete agreements were null and void because they contained no territorial limits. The trial court denied this motion, and the case proceeded to trial without the trial court determining whether the noncompete agreements were enforceable legally.

At the close of the plaintiff's case, Fellows and Awtrey moved for a directed verdict based upon the unenforceability of the noncompete agreements, and again raised the issue in their motion for j.n.o.v.

Although Fellows and Awtrey disputed the status of their employment with All Star, the record shows that both Fellows and Awtrey signed noncompete agreements with All Star. The noncompete agreements provided:

> For and in consideration of his or her employment by All Star, Inc., *[both Fellows' and Awtrey's names were entered]* (hereinafter "Employee"), hereby agrees that, for a period of three years following voluntary or involuntary termination of his employment with All Star, Inc., Employee will not attempt or seek, directly or indirectly, to provide video gaming machines, pinball machines, pool tables or any other product provided by or available from All Star, Inc., to any

person or entity known or believed by Employee to be a customer of All Star, Inc., as of the date of Employee's termination. It is understood and agreed that the purpose and effect of this provision is to preclude any former employee of All Star, Inc., from contacting or soliciting any customer of All Star, Inc., for purposes of providing or seeking to provide to that customer any product, item or service which the customer obtained or could have obtained from All Star, Inc. This provision is limited to customers of All Star, Inc., and is not applicable to non-customers of All Star, Inc., located within the geographical area serviced by All Star, Inc. This provision is limited to products, items or services provided or offered by All Star, Inc., and is not intended to preclude Employee from contacting or soliciting customers of All Star, Inc. to purchase or use products, items or services not available from All Star, Inc.

It is understood and agreed that this provision is severable from any and every other provision of any contract or agreement, written or oral, between Employee and All Star, Inc. or any employee, agent or representative of All Star, Inc., whether or not contemporaneous with this provision. This provision will remain in full force and effect in the event such contract or agreement, or any provision thereof, is voided or limited in any way.

Employee acknowledges and confirms that, in signing this Non-Compete and Non-Solicitation Agreement, he or she is not relying on any promises, representations or assertions made by any employee, agent or representative of All Star, Inc. but on Employee's own judgment.

1. We agree that the trial court erred by not determining, as a matter of law, whether the noncompete agreements could be enforced. *Rollins Protective Svcs. v. Palermo*, 249 Ga. 138, 139 (1) (287 SE2d 546) (1982). Even though termed a motion in limine, Fellows and Awtrey's motion plainly sought a ruling from the trial court on whether the noncompete agreements could be enforced. Under our rules of pleading the substance, and not mere nomenclature, controls, *Jones v. Spindel*, 128 Ga. App. 88, 103 (9) (196 SE2d 22) (1973) (reversed on other grounds), and pleadings are judged by their function and not the name given by a party. *Holloway v. Frey*, 130 Ga. App. 224, 227 (3) (202 SE2d 845) (1973). Therefore, the trial court should have ruled on whether the noncompete agreements could be enforced, as the construction of a plain and definite contract is for the

court, not the jury. *Village Enterprises v. Ga. R. Bank &c. Co.*, 117 Ga. App. 773, 774 (1) (161 SE2d 901) (1968).

2. Fellows and Awtrey contend only that the noncompete agreements were unenforceable because the agreements did not contain a territorial limitation.

> While a contract in general restraint of trade or which tends to lessen competition is against public policy and is void (1983 Ga. Const., Art. III, Sec. VI, Par. V (c); OCGA § 13-8-2), a restrictive covenant contained in an employment contract is considered to be in partial restraint of trade and will be upheld if the restraint imposed is not unreasonable, is founded on a valuable consideration, and is reasonably necessary to protect the interest of the party in whose favor it is imposed, and does not unduly prejudice the interests of the public.

*W. R. Grace & Co. v. Mouyal*, 262 Ga. 464, 465 (1) (422 SE2d 529) (1992). The reasonableness of a noncompete clause is determined by applying a three-element test of duration, territorial coverage, and scope of prohibited activity. *Reardigan v. Shaw Indus.*, 238 Ga. App. 142, 143 (1) (518 SE2d 144) (1999).

In *W. R. Grace & Co. v. Mouyal,* supra, our Supreme Court held that

> [a] territorial limitation is necessary to give the employee notice of what constitutes a violation of the restrictive covenant, and must specify with particularity the territory in which the employee is restricted. In construing a territorial restriction, we recognize that the reasonableness of the restriction is more dependent upon the facts and circumstances surrounding the case than on the geographic size of the territory. In determining reasonableness, consideration must be given to the employee's right to earn a living, and the employee's ability to determine with certainty the area within which his post-employment actions are restricted. At the same time, the employer has a protectible interest in the customer relationships its former employee established and/or nurtured while employed by the employer, and is entitled to protect itself from the risk that a former employee might appropriate customers by taking unfair advantage of the contacts developed while working for the employer.

(Citations omitted.) Id. at 465-466. This does not mean, however, that "an express geographic description" of the forbidden territory is

required. Id. at 467. Thus, when "the former employee is prohibited from post-employment solicitation of employer customers which the employee contacted during his tenure with the employer, there is no need for a territorial restriction expressed in geographic terms." (Footnote omitted.) Id. at 468.

In this appeal, the noncompete agreements contain neither specific territorial limits nor limit their restrictions to customers with whom Fellows and Awtrey had contacts during their employment with All Star. Instead, the agreements state

> that the purpose and effect of this provision is to preclude any former employee of All Star, Inc., from contacting or soliciting *any customer* of All Star, Inc., for purposes of providing or seeking to provide to that customer any product, item or service which the customer obtained or could have obtained from All Star, Inc.

(Emphasis supplied.) This restriction is "an unreasonable and overbroad attempt to protect the employer's interest in preventing the employee from exploiting the personal relationship the employee has enjoyed with the employer's customers." *W. R. Grace & Co. v. Mouyal,* supra, 262 Ga. at 467. Therefore, they are unenforceable. *American Software USA v. Moore,* 264 Ga. 480, 483 (1) (448 SE2d 206) (1994).

Accordingly, the trial court erred by submitting All Star's claims based upon the breach of these noncompete agreements to the jury.

3. Fellows and Awtrey assert that the trial court erred by denying their motions for a directed verdict and for j.n.o.v. The record shows that at the close of All Star's case Fellows and Awtrey moved for a directed verdict because the noncompete agreements lacked a territorial limit and were unenforceable, and after trial they moved for j.n.o.v. on this ground.

When determining whether the trial court erred by denying a motion for a directed verdict and motion for j.n.o.v., this court must review and resolve the evidence and any doubt or ambiguity in favor of the verdict. A directed verdict and j.n.o.v. are not proper unless there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom *demands* a certain verdict. *Southern Store &c. Co. v. Maddox,* 195 Ga. App. 2, 3 (1) (392 SE2d 268) (1990). Moreover, after a jury verdict is approved by the trial court, the judgment, which is supported by the evidence, will not be disturbed on appeal unless there is a material error of law. *Archer Motor Co. v. Intl. Business Investments,* 193 Ga. App. 86, 88 (2) (386 SE2d 918) (1989).

As we have found that the noncompete agreements All Star relied upon were not enforceable as a matter of law, Fellows and Awtrey were entitled to a directed verdict on All Star's claims arising from the breach of those agreements. We note, however, that not all of All Star's claims arose from the breach of the noncompete agreements and that some of those claims, e.g., tortious interference with business relationships, fraud, and theft by conversion, could exist independent of the noncompete agreements. Because the verdict did not differentiate between the various claims, it is not appropriate for this court to order the trial court to order the grant of a j.n.o.v. on all of these claims.

Accordingly, the judgment is reversed and the case is remanded to the trial court for further proceedings and with direction to grant a directed verdict on All Star's claims arising from the breach of the noncompete agreements.

*Judgment reversed and case remanded with direction. Blackburn, P. J., and Mikell, J., concur.*

DECIDED MARCH 17, 2005.

*Slater, King & Gross, Scott R. King, Edmund A. Waller*, for appellants.

*Lamalva & Oeland, Paul J. Oeland IV, Joseph A. Leaphart IV*, for appellee.

