A07A0558. REALTY LENDERS, INC. v. LEVINE et al.
(649 SE2d 333)

BERNES, Judge.

This is a dispossessory action brought by appellees Hilda Levine, Roy Levine, and the estate of Mark Levine d/b/a Village Square Ventures (collectively, "Village Square") against appellant Realty Lenders, Inc. d/b/a ReMax Premier ("ReMax"), the commercial tenant of property owned by Village Square. Following a bench trial, the trial court found that ReMax had breached the lease and entered a monetary judgment in favor of Village Square in the amount of $60,995.87 for overdue rent and other charges, plus $3,000 in attorney fees. The trial court denied ReMax's counterclaim seeking a set off for repairs it allegedly made to the premises. On appeal, ReMax contends that the trial court erred in denying its counterclaim and in awarding Village Square attorney fees. Finding no error, we affirm.

On appeal from the entry of judgment in a bench trial, the evidence must be viewed in the light most favorable to the trial court's

---

[25] See id. at 263; see also OCGA §§ 10-5-5; 10-5-12.

[26] See *Carter*, supra at 264.

[27] See id.

findings of fact. *Ellis v. Fuller*, 282 Ga. App. 307, 308 (638 SE2d 433) (2006). So viewed, the trial record reflects that Village Square is the owner of the premises located at 5474 Memorial Drive. In 1999, ReMax entered into a three-year commercial lease agreement for several suites located on the premises. Over the ensuing years, the lease was twice amended, extending its term. Then, in August 2004, the parties entered into a "Third Amendment to Lease" that incorporated the terms of the original lease and extended the lease term through October 31, 2005 (the "Amended Lease").

Under the Amended Lease, ReMax agreed to pay monthly base rent in the amount of $8,569.72. If Village Square did not receive the full rent within five days of the due date, ReMax was obliged to pay a late fee. Furthermore, ReMax agreed that "there [would] be no renewal of [the] lease by operation of law," and that if it remained in possession of the suites following the lease expiration date, it would pay holdover rent at "a rental rate equal to 150% of the rate in effect at the end" of the lease term. In addition to rent-related charges, ReMax promised to pay a set monthly fee of $1,302.38 representing a "proportionate amount of all common area electrical, grounds maintenance charges, security services and other common area charges and expenses . . . ('the CAM charges')." Finally, ReMax agreed to pay reasonable attorney fees incurred by Village Square in enforcing any of the obligations imposed upon ReMax by the Amended Lease.

In December 2005, Village Square commenced the instant dispossessory action against ReMax after an ongoing dispute over the amount of rent and other charges owed by ReMax under the Amended Lease. Village Square sought a writ of possession, monetary damages for breach of lease, interest, and reasonable attorney fees and expenses. ReMax filed an answer and counterclaim for set off based on the costs of certain repairs it allegedly had made to the premises. ReMax ultimately consented to the grant of the writ of possession but continued to dispute the amount of damages incurred by Village Square. On January 20, 2006, the trial court entered a consent order granting the writ of possession. ReMax vacated the premises on January 31, 2006. Thereafter, the trial court conducted a bench trial on the issue of damages for breach of the lease.

At the bench trial, Village Square maintained that while ReMax had paid some of the charges it owed under the Amended Lease, ReMax still owed a portion of base rent from August 1, 2004 through October 31, 2005; unpaid CAM charges; monthly holdover rental fees for November 2005, December 2005, and January 2006; and late fees. Village Square also asserted that ReMax had failed to reimburse it for fines it had incurred for 26 false alarms caused by ReMax's malfunctioning security system. In sum, Village Square claimed that it was

entitled to $82,415.98 in monetary damages. Additionally, Village Square claimed that it was entitled to $8,241.60 in reasonable attorney fees, an amount representing ten percent of the monetary damages sought.

ReMax did not dispute the amount of base rent that it owed or that Village Square was entitled to reimbursement for the false alarm charges. But, ReMax disputed the assertion that it owed any late fees, holdover fees, or attorney fees, and it maintained that it had paid out $15,000 for repairs that should be set off against the unpaid CAM charges, since the repairs allegedly should have been performed by Village Square under the Amended Lease.

Based on the testimony and documentary evidence presented at trial, the trial court entered judgment in favor of Village Square on its breach of lease claim. The trial court found that Village Square was entitled to the full amount it sought in unpaid base rent and false alarm charges, plus a portion of the late fees and holdover rent that it sought, for a total amount of $60,995.87 in damages. The trial court further found that Village Square was entitled to $3,000 in reasonable attorney fees. Finally, the trial court found that ReMax had failed to provide sufficient evidence as to the $15,000 it claimed to have spent on repairs, and, therefore, denied ReMax's counterclaim for set off. ReMax subsequently filed a motion for new trial or, in the alternative, motion for reconsideration, which the trial court denied after hearing oral argument from the parties. This appeal then ensued.

1. ReMax contends that the trial court erred in denying its counterclaim for set off. "[I]n a bench trial, the trial court sits as the trier of fact and its findings cannot be set aside unless they are clearly erroneous; therefore, the [trial court's denial of the counterclaim] must be affirmed if there is any evidence to support it." (Citation omitted.) *Smith v. Smith*, 281 Ga. 380, 383 (1) (637 SE2d 662) (2006). Here, there was ample support for the trial court's finding that ReMax had failed to establish that it had paid out $15,000 for repairs that allegedly should have been paid by Village Square under the Amended Lease.

As the trial court noted, and as the record reflects, ReMax attempted to establish its counterclaim solely through the testimony of its chief operating officer, who testified generally that he "[could] recall about $15,000.00 worth of different expenditures that [ReMax] made." ReMax failed to present any more specific testimony or evidence detailing the individual repair expenditures, the necessity for the expenditures, the date of the expenditures, or the nature of the expenditures to show that they should have instead been paid by Village Square. ReMax offered no invoices, statements, estimates, or any other documentary evidence explaining or describing the alleged

repairs with greater specificity. Furthermore, the Amended Lease provided that ReMax must "at once report in writing to [Village Square] any defective conditions known to [ReMax] which [Village Square] is required to repair," but ReMax failed to present any evidence that it fulfilled this reporting obligation. Given this record, the trial court committed no clear error in denying ReMax's counterclaim for set off. See generally *Habel v. Tavormina*, 266 Ga. App. 613, 618 (3) (597 SE2d 645) (2004) (the factfinder at trial is "the sole and exclusive judge[ ] of the weight and credit given the evidence," and "[a]s long as there is some evidence to support the verdict," it will not be overturned) (citation omitted).

2. ReMax next contends that the trial court erred in awarding attorney fees to Village Square. According to ReMax, the fees award was improper and unreasonable because the provision of the Amended Lease authorizing attorney fees is "unduly adhesive"; Village Square allegedly was not the prevailing party in the litigation; and the provision is unconscionable and in violation of OCGA § 13-8-2 (b).[1] We are unpersuaded.

ReMax's argument that the attorney fees provision is unenforceable as "unduly adhesive" is without merit. The Amended Lease, which the evidence reflects was negotiated between two business entities over several months, is not a contract of adhesion, "which has been defined as a standardized contract offered on a 'take it or leave it' basis and under such conditions that a consumer cannot obtain the desired product or service except by acquiescing in the form contract." (Citation omitted.) *Walton Elec. Membership Corp. v. Snyder*, 226 Ga. App. 673, 678 (2), n. 6 (487 SE2d 613) (1997), aff'd, 270 Ga. 62 (508 SE2d 167) (1998). And, in any event, the fact that a contract is adhesive does not, standing alone, render the contract unenforceable. *Mathis v. Orkin Exterminating Co.*, 254 Ga. App. 335, 337 (3) (562 SE2d 213) (2002) (pointing out that "contracts of adhesion are enforceable in Georgia, even though they are strictly construed against the drafter") (citation omitted).

---

[1] OCGA § 13-8-2 (b) provides in part:
A covenant, promise, agreement, or understanding in or in connection with or collateral to a contract or agreement relative to the construction, alteration, repair, or maintenance of a building structure, appurtenances, and appliances, including moving, demolition, and excavating connected therewith, purporting to indemnify or hold harmless the promisee against liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence of the promisee, his agents or employees, or indemnitee is against public policy and is void and unenforceable. . . .
The General Assembly recently enacted legislation amending OCGA § 13-8-2 (b), but the amendments did not become effective until July 1, 2007. See Ga. House Bill No. 136 (May 18, 2007).

ReMax also contends that the award of attorney fees was unreasonable because Village Square did not recover all of the damages it sought and thus should not be considered the prevailing party in the litigation. We disagree. Village Square recovered approximately three-fourths of the total amount of damages it sought, as well as significant nonmonetary relief, namely, a writ of possession. In contrast, ReMax lost on its counterclaim and recovered nothing. Under these circumstances, the trial court plainly was entitled to conclude that Village Square was the prevailing party. See, e.g., *Dan J. Sheehan Co. v. McCrory Constr. Co.*, 284 Ga. App. 159, 162 (1) (643 SE2d 546) (2007) ("[A] plaintiff prevails when actual relief on the merits materially alters the legal relationship between the parties by modifying the defendant's behavior in any way that directly benefits the plaintiff.") (citation and punctuation omitted); *Discovery Point Franchising v. Miller*, 234 Ga. App. 68, 73-74 (5) (505 SE2d 822) (1998) (party that recovered damages was prevailing party); *Hardwick, Cook & Co. v. 3379 Peachtree, Ltd.*, 184 Ga. App. 822, 824-825 (2) (363 SE2d 31) (1987) (landlord who was awarded possession of the premises in a dispossessory action was the prevailing party).

Finally, ReMax argues that the attorney fees provision is unconscionable and violates the restriction upon exculpatory clauses imposed by OCGA § 13-8-2 (b). These arguments are waived on appeal because they were never raised before or ruled upon by the trial court. See *Davis v. Whitford Properties*, 282 Ga. App. 143, 145 (1) (637 SE2d 849) (2006); *City of Cairo v. Hightower Consulting Engineers*, 278 Ga. App. 721, 725-726 (1) (629 SE2d 518) (2006) (waiver of argument that contract provision was unenforceable under OCGA § 13-8-2 (b)); *McLeod v. Robbins Assn.*, 260 Ga. App. 347, 348 (1) (579 SE2d 748) (2003) (waiver of argument that contract provision was unconscionable). Nevertheless, we note that ReMax's arguments are predicated on the false premise that the attorney fees provision would entitle Village Square to recover attorney fees even if it was found to be the party at fault for breach of the Amended Lease. A separate provision of the Amended Lease entitled "Indemnity" specifically provides that "reasonable attorney[ ] fees" need not be paid to Village Square if the breach of the Amended Lease was "caused by the negligence of [Village Square], its agents or employees." Hence, the Amended Lease, when read as whole, makes clear that Village Square could recover attorney fees only if it was not the party at fault for the breach. See generally *Ga. Farm &c. Ins. Co. v. Ray*, 148 Ga. App. 85, 86 (251 SE2d 34) (1978) (this Court "will look to the whole contract in arriving at the construction of any part") (citation omitted).

3. Village Square has moved for sanctions for frivolous appeal under OCGA § 5-6-6. While we ultimately have found no merit to this appeal, we cannot conclude that ReMax has pursued it for purposes

of delay only. Village Square's motion thus is denied. See *Ellis v. Stanford*, 256 Ga. App. 294, 298 (7) (568 SE2d 157) (2002).

*Judgment affirmed. Blackburn, P. J., and Ruffin, J., concur.*

DECIDED JULY 5, 2007.

*Jesse L. Young*, for appellant.
*James E. Friese*, for appellees.