A08A1277. McCLELLAN et al. v. EVANS.
(669 SE2d 554)

RUFFIN, Presiding Judge.

Michael McClellan was struck and injured by a pickup truck driven by Kenneth Evans as McClellan was crossing the roadway between the parking lot and the entrance of a Wal-Mart Supercenter in Valdosta. McClellan and his wife, Kelly McClellan, filed an action against Evans seeking damages for Michael McClellan's personal

---

[14] See *All Fleet Refinishing v. West Ga. Nat. Bank*, 280 Ga. App. 676, 683 (7) (a) (634 SE2d 802) (2006).

injuries, medical expenses, and lost wages, and for Kelly McClellan's loss of consortium. Following a trial, the jury found for Evans.[1] On appeal, the McClellans contend that the trial court erred (i) in denying their pre-trial motion requesting permission to ask Evans about his alleged agreement with the McClellans' uninsured motorist insurance carrier; (ii) in limiting cross-examination of Evans concerning the alleged agreement; (iii) in failing to provide a curative instruction to the jury in light of defense counsel's improper closing argument; (iv) in stopping their counsel's closing argument; and (v) in limiting redirect examination of Kelly McClellan. For the reasons set forth below, we disagree and affirm.

1. The McClellans filed a pre-trial motion in limine in which, in addition to asking that certain evidence be excluded, they requested permission to ask Evans whether he entered into an agreement with their uninsured motorist insurance carrier, Georgia Farm Bureau Mutual Insurance Company, in exchange for Evans's agreement to testify for the defense. The trial court denied the pre-trial motion and then precluded cross-examination on the subject of the alleged agreement at trial. The McClellans contend that the trial court erred in doing so. We disagree.

The record shows that Georgia Farm was served with a copy of the complaint and answered in its own name. Georgia Farm withdrew its originally filed answer before trial and proceeded to defend the action in Evans's name under the authority of OCGA § 33-7-11 (d). Evans subsequently testified outside the presence of the jury as part of an offer of proof by the McClellans regarding an alleged agreement between Evans and Georgia Farm. Evans's testimony showed that Georgia Farm had waived its right of subrogation against him.[2] According to Evans, his original attorney had "resolved" the waiver and then asked him to "cooperate and be here when [Georgia Farm] need[s] me to be here. That's all I was asked to do, and that's why I'm here."

As a general rule, "evidence of insurance coverage is so prejudicial by nature that it should not be admitted unless it is clearly relevant and, as with any generally prejudicial evidence, in determining its admissibility, the trial court should not admit it unless its relevance outweighs its prejudice."[3] Further,

---

[1] According to the verdict form, the jury apportioned fault "50/50."

[2] The McClellans had also executed a limited liability release in favor of Evans discharging him from liability for the incident at the Wal-Mart Supercenter "except to the extent other insurance coverage is available."

[3] (Punctuation omitted.) *Cincinnati Ins. Co. v. Reybitz*, 205 Ga. App. 174, 176 (1) (421 SE2d 767) (1992).

[t]he rule that the plaintiff be allowed the right of a thorough and sifting cross-examination must be balanced against the rule that irrelevant matters of insurance coverage should be excluded from evidence. In the interest of justice, the matter of insurance which is not a germane issue, should be kept out.[4]

Applying these principles, we conclude that the trial court did not abuse its discretion in refusing to "reveal the deal" as the McClellans allege nor in limiting the scope of cross-examination concerning the alleged agreement.[5] Georgia Farm's uninsured motorist policy is not relevant by itself to any issue in the case, and the existence of the policy was necessary to establish the alleged agreement between Evans and Georgia Farm. The McClellans argue that any agreement between Evans and Georgia Farm was relevant to show Evans's interest in or bias in the case.[6] But the McClellans failed to establish that Evans had promised anything to Georgia Farm in exchange for the waiver of subrogation or that the waiver was in any way contingent on the content of Evans's testimony. At most, the McClellans' offer of proof showed that Evans agreed to cooperate with Georgia Farm, per instructions from his original attorney, by appearing at trial. According to Evans, he was asked "to come in and testify. I'm not trying to defend Georgia Farm. . . ."

Given that Evans stood to receive the benefit of the waiver whatever the nature of his testimony or the outcome of the trial and that the McClellans failed to demonstrate that the scope of the alleged agreement went beyond Evans showing up at the trial, the trial court could reasonably conclude that the prejudice inherent in revealing the existence of Georgia Farm's insurance policy outweighed its probative value.[7] It follows that the trial court did not err in denying the McClellans' pre-trial motion to allow them to ask

---

[4] (Punctuation omitted.) *Thomas v. Newnan Hosp.*, 185 Ga. App. 764, 767 (1) (365 SE2d 859) (1988).

[5] See *King v. Zakaria*, 280 Ga. App. 570, 573 (1) (634 SE2d 444) (2006) ("[t]he admission of evidence is committed to the sound discretion of the trial court, whose determination shall not be disturbed on appeal unless it amounts to an abuse of discretion") (punctuation omitted). The McClellans' attorney was able to cross-examine Evans as to alleged discrepancies between Evans's trial testimony and his pre-trial deposition.

[6] See *Chambers v. Gwinnett Community Hosp.*, 253 Ga. App. 25, 26 (1) (557 SE2d 412) (2001) ("as a general principle, the jury is entitled to consider a witness's financial interest in a case"); *Rogers v. Black*, 121 Ga. App. 299, 301 (1) (173 SE2d 431) (1970) ("[a] witness may always be cross examined as to his interest, attitude, bias, and feelings in the case").

[7] See, e.g., *King*, supra (noting concern that evidence of defendant's insurer could motivate jury to award greater damages). Compare *Cunningham v. State*, 240 Ga. App. 92, 94 (1) (c) (522 SE2d 684) (1999) (witness's financial interest in the case was a proper subject of cross-examination).

Evans about the alleged "deal" or in limiting the scope of Evans's cross-examination.

2. During closing argument, the McClellans objected when defense counsel argued that in any damage award, "the duty is on [you] just to do what is fair, but [it is] not only to be fair to [the McClellans], but that award has also got to be fair to [Evans]." The McClellans contend that this argument was misleading because it implied that Evans would be personally responsible for any verdict rendered against him and that the trial court erred in refusing to provide a curative instruction to the jury. We disagree.

"Counsel is permitted wide latitude in closing argument and any limitation of argument is a matter for the trial court's discretion."[8] That the jury should be fair to both parties in awarding damages is an accepted principle.[9] Consistent with this principle, the trial court charged the jury without objection that "the law seeks to ensure that the damages awarded are fair to both parties." In his own closing argument, the McClellans' attorney asked the jury to "just be fair" with Mr. McClellan in awarding damages.

Since the McClellans' counsel asked the jury to be fair to his client, it appears somewhat disingenuous for the McClellans to contend that defense counsel should not have been allowed to make the same argument. In any case, the McClellans show no authority for the proposition that a jury should *not* be fair to a defendant in awarding damages or that asking a jury to be fair to the defendant is an impermissible closing argument. Accordingly, we find no abuse of discretion by the trial court.

3. The McClellans contend that the trial court improperly stopped their counsel's closing argument. We disagree.

During the McClellans' counsel's closing argument, defense counsel asked to approach the bench and an unrecorded conference ensued. The McClellans' counsel then proceeded with his argument, stating to the jury that "I'm going to try and go ahead and finish up." Since the bench conference was not recorded, we do not know what occurred, but it is apparent from discussion among counsel and the trial court after closing argument had concluded that defense counsel had objected to the length of the McClellans' counsel's argument on the grounds that it exceeded one hour. If the trial court had sustained the objection it does not appear on the record, and it is possible that the trial court overruled the objection since defense counsel made an offer of proof as to the length of the McClellans' counsel's argument.

---

[8] (Punctuation omitted.) *Lillard v. Owens*, 281 Ga. 619, 622 (2) (641 SE2d 511) (2007).

[9] See *Collins v. Porterfield*, 102 Ga. App. 294, 297 (3) (c) (116 SE2d 105) (1960).

The McClellans contend that in light of OCGA § 9-10-180, their counsel was allowed two hours for closing argument and that the trial court improperly limited that time.[10] Pretermitting whether the trial court was required to allow two hours for closing argument, the McClellans fail to show any clear ruling by the trial court either limiting[11] or stopping their counsel's argument, nor can they show that the trial court instructed their counsel during the unrecorded bench conference to hurry the concluding portion of his argument, or whether, if the trial court did give such an instruction, the McClellans' counsel simply acquiesced. "As the appellant, [the McClellans] had the burden to affirmatively show error by the record."[12] The McClellans have failed to do so.

4. The McClellans also claim that the trial court erred in limiting redirect examination of Kelly McClellan. We disagree.

During cross-examination of Kelly McClellan, who had asserted a claim for loss of consortium, defense counsel established that she had her "own health problems" as a result of a head-on car collision; that the injuries she incurred in that collision had affected her relationship with her husband; and that the collision was totally separate from the incident at issue in this case. Defense counsel also established, without objection, that she had filed a lawsuit as a result of the car accident and that Michael McClellan had filed a loss of consortium claim in that lawsuit.

On redirect examination, the McClellans' counsel asked several questions about the collision and the lawsuit. Defense counsel objected when the McClellans' counsel asked the witness to tell the jury "Who is the other party who will not resolve the case and acknowledge that you've been injured?," and she answered "My insurance company." Subsequent discussion among counsel and the trial court showed that the insurance company was Georgia Farm. The trial court sustained defense counsel's objection and ruled that the witness would not be allowed to identify the outstanding party in the other lawsuit and that "we're not going to mention insurance."

The McClellans argue that since the defense had broached the issue of the other lawsuit, the trial court erred in limiting redirect examination of the witness. "The test on deciding the scope of

---

[10] See *Rouse v. Polott*, 274 Ga. App. 226, 227-228 (1) (617 SE2d 185) (2005) (where counsel made a timely request to extend closing argument to two hours, citing OCGA § 9-10-181 as authority, the trial court erred in denying the request).

[11] We agree with the McClellans' brief that: "No clear direction was given from the Court to McClellans' counsel regarding the amount of time he would be allowed, other than the Court's statement, made in jest, that 'if you go over an hour, I'll be gone[,]' as it was nearing the lunch hour."

[12] (Citation and punctuation omitted.) *Sebby v. Costo*, 290 Ga. App. 61, 62 (658 SE2d 830) (2008).

redirect is whether the court abused its discretion."[13] Defense counsel arguably "opened the door" to the issue of the other lawsuit, and the trial court properly allowed the McClellans to pursue the issue on redirect.[14] For example, the McClellans maintain that by asking about the other lawsuit, the defense was suggesting that the McClellans were unduly litigious, but the McClellans' counsel was able to establish that "the person that hit [Kelly McClellan] admitted that they were wrong." The McClellans' counsel was also allowed to ask who the attorneys were in the other action and to establish there was one party remaining but that the person who hit Kelly McClellan was no longer involved. On the other hand, while defense counsel had broached the issue of the other lawsuit, he did not inquire into the opposing parties or any insurance issues in that case. The trial court was entitled to conclude that the actual names of the parties and any insurance issues in the other lawsuit had little, if any, probative value, while the identification of Georgia Farm as the remaining party posed a risk of placing unfairly prejudicial evidence before the jury. Accordingly, we find no abuse of discretion by the trial court in limiting the redirect examination of Kelly McClellan.[15]

*Judgment affirmed. Andrews and Bernes, JJ., concur.*

DECIDED NOVEMBER 17, 2008.

*Langdale & Vallotton, W. Pope Langdale III, Christina L. Folsom*, for appellants.
*William A. Turner, Jr.*, for appellee.

---

[13] *Appleby v. State*, 256 Ga. 304, 306 (4) (348 SE2d 630) (1986).
[14] See *Smith v. Smith*, 125 Ga. App. 257, 258 (4) (187 SE2d 330) (1972) (as defendants had injected the issue of insurance into the case, they could not complain that the topic was further pursued by plaintiffs' counsel).
[15] See *Appleby*, supra.