A10A0314. ROYALSTON et al. v. MIDDLEBROOKS.
(696 SE2d 66)

MIKELL, Judge.

Collie M. Middlebrooks filed a personal injury action against Kimberly Davis, John Spencer Royalston, and Georgia Sandwich Company, Inc. ("GSC"), Royalston's employer, seeking damages for injuries he sustained in a multi-vehicle collision. The jury awarded Middlebrooks compensatory damages in the amount of $3,064,836, punitive damages in the amount of $1,000,000,[1] and attorney fees and expenses in the amount of $621,780.96. Royalston and GSC appeal, asserting that the trial court erred when it denied their motions for directed verdict and for judgment notwithstanding the verdict ("j.n.o.v.") and their motions in limine, which sought to exclude the testimony of two witnesses. Appellants also assert as error the admission of testimony regarding Royalston's workers' compensation claim, the trial court's charges to the jury on reckless driving, speeding, and improper lane change, the denial of their motion for new trial; and the denial of their motions for directed verdict and for j.n.o.v. on punitive damages and attorney fees.

---

[1] The trial court reduced the punitive damages award to $250,000 in its judgment on the jury verdict, pursuant to OCGA § 51-12-5.1 (g).

Finding no error, we affirm.

Viewed in the light most favorable to the verdict,[2] the evidence shows that at approximately 7:00 a.m. on July 28, 2005, Middle-brooks, who was driving a pickup truck, traveled north on Maxham Road to its intersection with Salt Springs Place, where he stopped in the left-hand lane to make a left turn. While waiting to turn, Middlebrooks saw Royalston's truck, which was driving south on Maxham Road, switch from the outside to the inside lane. At that moment, Middlebrooks was rear-ended by Davis's car and the front end of his pickup truck was struck forcefully by Royalston's delivery truck. Middlebrooks testified that although he saw Royalston approaching, there was nothing that he could do to avoid the accident, so he kept his foot on the brake and braced for the impact. Middlebrooks did not know whether the rear-end impact pushed him forward or across the centerline, and he did not see Royalston's truck cross the centerline.

Middlebrooks testified that he was extricated from his vehicle after the door and dashboard of his truck were removed by emergency personnel; that he was taken to the hospital, where he lay in traction for ten days; and that he had surgeries on his hip and wrist and remained in the hospital for two months, during which time he learned how to walk again. Middlebrooks had a total of four surgeries, the last of which occurred in January 2009. He also testified that he was planning to have another surgery on his wrist and that one of his legs was now shorter than the other, requiring him to wear a foot insole for the rest of his life.

Royalston testified that he began his employment as a delivery driver with GSC in June 2004;[3] that his first delivery stop was located approximately 15 or 20 minutes from GSC; and that the accident occurred while he was en route to his first stop. Royalston further testified that he had a good view of the northbound traffic approaching as he traveled in the inside southbound lane of Maxham Road; that he did not see Davis rear-end Middlebrooks; that he did not see Middlebrooks's truck until Middlebrooks hit him; and that the impact was such that he thought Middlebrooks was dead. Davis testified that she was responsible for rear-ending Middlebrooks's truck and that she was cited for following too closely, to which she pled guilty.

Antonio Smith testified that he was driving south on Maxham Road behind Royalston's truck for approximately five to six miles before the accident occurred. According to Smith, Royalston was

---

[2] *Davenport v. Yawn*, 297 Ga. App. 685, 688 (2) (678 SE2d 148) (2009).

[3] According to Royalston, GSC was owned by two brothers, Samuel and Mike Gordon, and the company sold sandwiches to gas stations and other small vendors.

speeding and "going in and out of lanes, going in front of cars, trying to switch over, [and] passing cars." Smith recalled that Royalston would pull off quickly from each traffic signal on Maxham Road where they had stopped to observe a red light. Smith also saw Royalston move from the outside to the inside lane to pass a car before the accident, and Smith observed that the car Royalston passed when he switched lanes was able to stop to avoid the accident. Smith also testified that as he watched Royalston's truck, he thought to himself that the driver was going to cause an accident.

Thomas Phillip Langley, a traffic accident reconstructionist, testified that based on his investigation of the scene and vehicles involved, he concluded that Davis's car struck the right rear of Middlebrooks's truck, forcing it to rotate into the oncoming lane of travel and move about 20 feet before it stopped; that Royalston's truck, which was 18 feet long and traveling at a speed of 45 to 50 miles per hour, swerved to the right before striking the front end of Middlebrooks's vehicle; and that Royalston could have avoided the collision. Langley opined that based on Middlebrooks's testimony, approximately two to four seconds passed between the time that Middlebrooks was rear-ended and when he saw Royalston's truck coming at him; and that assuming Royalston was traveling the speed limit of 45 miles per hour, he had 3.76 to 5.76 seconds to react, during which time he could have stopped his truck 60 to 200 feet away from Middlebrooks's vehicle.

1. Appellants contend that the trial court erred in denying their motions for directed verdict and for j.n.o.v. because the uncontradicted physical evidence demonstrated that the accident happened suddenly, leaving Royalston no time to avoid the collision. We disagree.

> A directed verdict is proper only where there is no conflict in the evidence as to any material issue and the evidence introduced with all reasonable inferences therefrom demands a particular verdict. On appeal, the standard of review of a trial court's denial of a motion for directed verdict is the "any evidence" standard.[4]

"The jurors are the sole and exclusive judges of the weight and credit given the evidence"[5] and they decide questions of causation except in palpable, clear, and indisputable cases.[6] In the instant case, Langley

---

[4] (Citation omitted.) *Morton v. Horace Mann Ins. Co.*, 282 Ga. App. 734, 735 (1) (639 SE2d 352) (2006). See also OCGA § 9-11-50 (a).

[5] (Footnote omitted.) *Burchfield v. Madrie*, 241 Ga. App. 39, 42 (2) (524 SE2d 798) (1999).

[6] Id.

opined that Royalston could have avoided the accident, but he testified on cross-examination that if the only evidence to consider in the case were the physical evidence, it was also possible that Middlebrooks's vehicle could have been pushed into Royalston's path suddenly, leaving Royalston no time to react. However, the jury did not have only the physical evidence to consider. There was also evidence from Smith that Royalston was speeding and driving erratically. Smith also testified that a car that Royalston passed before the accident was able to stop, from which the jury could infer that had Royalston not been speeding or had he been paying attention, he could have avoided the accident as well. In light of this evidence, we cannot conclude a verdict in favor of appellants was demanded. Thus, this enumerated error fails.

2. Appellants argue that the trial court should have excluded Smith's testimony as well as that of Ardella Crawford, Royalston's supervisor. We disagree.

"The admissibility of evidence is a matter which rests largely within the sound discretion of the trial court[,]"[7] and "[t]his Court does not re-weigh the evidence before the trial court or judge witness credibility, as these are not appellate court functions."[8] Additionally, any inconsistencies in a witness's testimony affects the credibility of that testimony, which is a matter for the jury's resolution.[9]

(a) Appellants assert that Smith's testimony was inconsistent and that three specific portions of his testimony should have been excluded: (1) that Royalston was speeding; (2) that Royalston was "weaving"; and (3) that he thought that Royalston was going to cause an accident. "[A] lay witness may express opinions regarding speed . . . based upon personal observations."[10] Smith did not testify that Royalston was "weaving" but that he repeatedly changed lanes and passed vehicles.

> [E]vidence which, in connection with other evidence, tends, however slightly, to prove, explain, or illustrate a fact, even though it is not sufficient, standing alone, to sustain a finding of such fact, is relevant, has probative value and is admissible as against objection as to its relevancy and probative value; doubt as to the latter should be resolved in

---

[7] (Punctuation and footnote omitted.) *Clary v. City of Stockbridge*, 300 Ga. App. 623, 625 (1) (686 SE2d 288) (2009).

[8] (Citation omitted.) *Joiner v. Lane*, 235 Ga. App. 121 (508 SE2d 203) (1998).

[9] See *Classic Restorations v. Bean*, 155 Ga. App. 694, 695 (1) (272 SE2d 557) (1980).

[10] (Citation omitted.) *Heath v. Rush*, 259 Ga. App. 887 (578 SE2d 564) (2003).

favor of admission and against exclusion, sufficiency not being a test or condition of admissibility.[11]

Smith's testimony about the manner in which Royalston drove was admissible as it tended to prove or illustrate that Royalston was speeding. Finally, a witness may testify as to his impression based upon facts observed by him.[12] Consequently, Smith's testimony that he thought that Royalston might cause an accident was properly admitted.

(b) Ardella Crawford, Royalston's route supervisor, testified that on the day in question, Royalston had the most routes to complete; that he was angry because she added an additional order to his route; and that he called her a "bitch" and "sped out of the gate," driving "in a very fast manner." Appellants argue that because this exchange occurred one hour and forty-five minutes before the collision, the testimony should not have been admitted.

"[W]here the relevancy or competency of evidence is doubtful, it should be admitted and its weight left to the determination of the jury."[13] "[W]e will not overturn the trial court's decision to admit evidence unless there is an abuse of that discretion[,]"[14] and we find no such abuse here. Moreover, even if Crawford's testimony that Royalston was speeding should have been excluded, the error was harmless in light of other testimony that Royalston was speeding when the accident occurred.[15]

3. Next, appellants argue that the trial court erred when it permitted testimony regarding Royalston's workers' compensation claim. Specifically, appellants contend that the cross-examination of Royalston on his claim constituted improper impeachment evidence. Royalston was asked if he filed a workers' compensation claim, and he replied that he had, after which a bench conference ensued, which was not recorded by the court reporter. At the conclusion of the bench conference, the trial judge remarked, "So that's what this is about. It goes to credibility." As no objection to this evidence was made on the record, there is nothing for this court to review. Appellants have the burden to show error affirmatively by the

---

[11] (Citation and punctuation omitted.) *Dept. of Transp. v. Dalton Paving &c.*, 227 Ga. App. 207, 221 (8) (489 SE2d 329) (1997).

[12] See *Dual S. Enterprises v. Webb*, 138 Ga. App. 810, 811 (2) (227 SE2d 418) (1976).

[13] (Citations omitted.) *Lovejoy v. Tidwell*, 212 Ga. 750, 751 (95 SE2d 784) (1956).

[14] (Footnote omitted.) *Dept. of Transp. v. Crowe*, 299 Ga. App. 756, 757 (683 SE2d 695) (2009).

[15] See *Dept. of Transp. v. Cannady*, 270 Ga. 427, 429 (2) (511 SE2d 173) (1999) (an erroneous evidentiary ruling does not require reversal absent harm).

record, and they have failed to do so here.[16]

4. Appellants contend that the trial court improperly charged the jury on reckless driving, speeding, and improper lane change. We find no error.

"A jury charge must be adjusted to the evidence, apt, and a correct statement of the applicable law."[17] The charge, as read to the jury, is not included in the record, but Middlebrooks's written requests to charge are included. The requested reckless driving charge stated that "Any person who drives any vehicle in reckless disregard for the safety of persons or property commits the offense of reckless driving" and that the violation of the statute constitutes negligence per se, which means negligence as a matter of law. The charge tracks the language of the reckless driving statute, OCGA § 40-6-390 (a). Additionally, it is correct that a violation of the Uniform Rules of the Road establishes negligence per se.[18] Appellants argue that there must be evidence of a "serious traffic offense" in order for a charge on reckless driving to be appropriate, relying on *Cabral v. White*,[19] but *Cabral* does not stand for this proposition.[20] In light of Smith's testimony that Royalston was speeding and repeatedly changed his lane of travel to bypass cars, the charges on reckless driving and speeding were authorized. Smith also testified that Royalston changed lanes right before the accident and that the car he passed was able to stop before the intersection where the accident occurred. Langley testified that Royalston could have avoided the accident had he been paying attention. All of this testimony supported Middlebrooks's charge on improper lane change, i.e., that a vehicle shall not move into another lane "until the driver has first ascertained that such movement can be made with safety."

5. In their fifth enumeration of error, appellants contend that the trial court should have granted their motion for new trial because the jury apportioned damages in a manner that was unreasonable and contrary to the evidence, in violation of OCGA §§ 51-12-33 (b) and 13-6-4. OCGA § 51-12-33 (b) provides, in pertinent part, that "[w]here an action is brought against more than one person for injury to person or property, the trier of fact . . . shall . . . apportion its award of damages among the persons who are liable according to the percentage of fault of each person." OCGA § 13-6-4

---

[16] See *McClellan v. Evans*, 294 Ga. App. 595, 599 (3) (669 SE2d 554) (2008).

[17] (Citation and punctuation omitted.) *King v. Davis*, 287 Ga. App. 715 (652 SE2d 585) (2007).

[18] See *Cox v. Cantrell*, 181 Ga. App. 722, 724 (5) (353 SE2d 582) (1987).

[19] 181 Ga. App. 816 (354 SE2d 162) (1987).

[20] Id. at 816 (1) (reckless driving is classified as a serious traffic offense).

provides that "[t]he question of damages being one for the jury, a reviewing court should not interfere unless the damages are either so small or so excessive as to justify the inference of gross mistake or undue bias." In the instant case, the jury found that Davis, the driver who rear-ended Middlebrooks, was 42 percent at fault and that Royalston was 58 percent at fault. "[I]n arriving at how to express these different degrees of culpability in mathematical terms, the jury was not bound by any specific formula; instead, the matter was to be 'determined according to the enlightened conscience of the fair and impartial jury.' "[21] Although Davis caused the first impact, there was evidence in the case that Royalston could have avoided the impact that caused Middlebrooks's severe injuries. Based on this evidence, we cannot conclude that the jury's apportionment of damages was the product of gross mistake or undue bias.

6. In its final enumeration of error, appellants argue that the trial court erred in denying its motions for directed verdict and j.n.o.v. on the issues of punitive damages and attorney fees. Again, we disagree.

At the conclusion of the compensatory phase of the trial, the jury was allowed to consider GSC's liability for punitive damages and attorney fees pursuant to OCGA § 13-6-11 based on Middlebrooks's claim that GSC negligently hired and retained Royalston. OCGA § 13-6-11 provides that

> [t]he expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them.

We have held that

> [i]t is only necessary to the plaintiff's recovery that he show any one of these three conditions exists. Bad faith warranting an award of attorney fees must have arisen out of the transaction on which the cause of action is predicated. It may be found in how defendant acted in his dealing with the plaintiff. The question of bad faith in the underlying transaction is for the trier of fact to determine.[22]

On appellate review, "[a]n award of attorney fees supported by any

---

[21] (Citation omitted.) *Surles v. Cornell Corrections of California*, 290 Ga. App. 260, 270 (3) (b) (659 SE2d 683) (2008).

[22] (Punctuation and footnotes omitted.) *City of Atlanta v. Hofrichter*, 291 Ga. App. 883,

evidence must be affirmed."[23]

In support of his bad faith claim, Middlebrooks elicited testimony from Royalston that he had two speeding tickets on his record before he was hired by GSC and that he received six speeding tickets while driving in his personal vehicle between the time he was hired by GSC and the date of the accident. Middlebrooks also introduced into evidence GSC's responses to requests for admission pertaining to whether it obtained a motor vehicle report on Royalston. In response, GSC stated as follows:

> It is defendant's policy to obtain records for all drivers employed by this defendant, and this defendant believed it did obtain [a motor vehicle report] for Mr. Royalston at the time of his hiring. However, this defendant admits that it does not have any [motor vehicle reports] in Mr. Royalston's employment file.

Samuel Gordon, one of the owners of GSC, testified that he was not aware of the tickets that Royalston received after his hiring; that the company's insurance carrier obtained motor vehicle reports on their drivers annually and had previously disqualified some drivers from employment in the past; and that Crawford, who was Royalston's supervisor, recommended him for the position.

Crawford testified that while training Royalston, she noticed that he was speeding and passed trailers on the roadway in areas where passing was not allowed; that she told one of the owners, Mike Gordon, about what she observed; that Mike Gordon required her to obtain copies of the drivers' licenses every six months and send them to him; and that on one occasion, Royalston did not have his license because it had been taken by the police, but he provided her with two tickets that he had received, which she faxed to Mike Gordon. Crawford further testified that by the time she trained drivers, they were already hired; that when she told Mike Gordon about Royalston's driving, his only inquiry was whether Royalston was capable of delivering the sandwiches; and that GSC would hire "the worst driver in the world, the worst disrespectful employee in the world" if that is what the company wished to do.

Although GSC argues that the owners of the business did not know and were not required to know that Royalston acquired six speeding tickets while in their employ, there was evidence from which the jury could infer otherwise and find bad faith arising out of

888 (2) (663 SE2d 379) (2008).
[23] (Footnote omitted.) *Baker v. Miller*, 265 Ga. 486 (2) (458 SE2d 621) (1995).

GSC's decision to hire and/or retain Royalston. It is undisputed that Royalston had two citations for speeding on his motor vehicle report when he was hired. GSC admitted that its practice was to obtain motor vehicle reports on its drivers but that there was no such report in Royalston's records. Crawford testified that she informed GSC of Royalston's propensities when driving and faxed one of the owners the two citations that Royalston had received when Royalston was unable to produce his driver's license because it was in the possession of the police. In light of this evidence, we cannot find that the trial court erred when it denied GSC's motions on the issue of bad faith damages.

This same evidence supports the denial of GSC's motions on the issue of punitive damages.

> Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.[24]

In this case there is sufficient evidence from which the jury could have concluded that GSC's actions showed an entire want of care and indifference to consequences.[25]

*Judgment affirmed. Barnes, P. J., and Bernes, J., concur.*

## DECIDED MAY 5, 2010.

*Hicks, Casey & Foster, Richard C. Foster, Andrea A. Guariglia,* for appellants.

*Andrews, Knowles & Princenthal, Adam P. Princenthal, Groth & Makarenko, Nikolai Makarenko, Jr., Rosser A. Malone,* for appellee.

---

[24] OCGA § 51-12-5.1 (b).

[25] See *Hoffman v. Wells*, 260 Ga. 588-589 (1) (397 SE2d 696) (1990).