A11A2227. WRIGHT et al. v. APARTMENT INVESTMENT AND MANAGEMENT COMPANY et al.
(726 SE2d 779)

MILLER, Judge.

Apartment Investment and Management Company ("AIMCO") and OP Property Management, LLC ("OP Property Management"), (collectively, the "AIMCO Group"), sued Garland Calvin Wright, Stephanie Wright, and S&D Associates, LLC (collectively, "Appellants"),[1] claiming that Mr. Wright committed fraud in breach of his fiduciary duty to the AIMCO Group, and that Mrs. Wright and S&D Associates conspired in the fraud.[2] After a trial, the jury returned a verdict in favor of the AIMCO Group. Appellants moved for judgment notwithstanding the verdict ("j.n.o.v.") or, in the alternative, for a new trial. The trial court denied those motions, and this appeal followed.

---

[1] The AIMCO Group also named other defendants who are not parties on appeal.

[2] The AIMCO Group also asserted a claim of interference with contractual relations against Appellants, but this claim was dismissed on partial summary judgment.

For the reasons discussed below, we affirm the judgment in favor of AIMCO and reverse the judgment in favor of OP Property Management.

"In reviewing the denial of a . . . motion for a j.n.o.v., or motion for new trial, this Court must affirm if there is any evidence to support the jury's verdict, and in making this determination, we must construe the evidence in the light most favorable to the prevailing party." (Citations and punctuation omitted.) *Ferman v. Bailey*, 292 Ga. App. 288, 290 (2) (664 SE2d 285) (2008); *Signsation, Inc. v. Harper*, 218 Ga. App. 141, 142 (2) (460 SE2d 854) (1995) ("[T]he determinative question is not whether the verdict and the judgment of the trial were merely authorized, but is whether a contrary judgment was demanded.") (citations and punctuation omitted).

Viewing the record in the light most favorable to Appellants, the evidence shows that from September 2005 until January 2007, Mr. Wright was employed as AIMCO's Senior Director of Construction Services, serving as the on-site manager for three multimillion dollar apartment complexes — the Falls of Bells Ferry, Rivercrest, and Knollwood — in Georgia and Tennessee. AIMCO owned and constructed apartment complexes throughout the United States. Because of the volume of properties owned by AIMCO, AIMCO created single-purpose entities — Ambassador IV, LLP; Rivercrest, LLP; and Knollwood, LLP — to serve as the beneficial owners of the three respective apartment complexes. OP Property Management, a wholly-owned subsidiary of AIMCO, managed these properties on AIMCO's behalf. As Senior Director of Construction Services, Mr. Wright was designated as the "owner's representative," which included the beneficial owner and OP Property Management.

Since AIMCO had a large number of projects across the country, Mr. Wright, as the Senior Director of Construction Services, was given a great deal of autonomy and authority in managing millions of dollars on AIMCO's behalf. In his duties, Mr. Wright interfaced with general contractors, prepared contracts, solicited and reviewed bids for AIMCO's projects, and recommended to AIMCO which general contractor should be awarded a particular contract. AIMCO also relied on Mr. Wright's review and approval of general contractor's applications for payment, which required him to inspect and verify the work performed at the three construction projects. Additionally, as the AIMCO Group representative, Mr. Wright was authorized in non-emergency situations to approve changes in scope of work contract documents, scheduling, and costs.

During his solicitation for bids on the Falls of Bells Ferry project, Mr. Wright introduced SHEP Services — a construction company owned by Shepard — to AIMCO. Mr. Wright recommended that

AIMCO award SHEP Services a contract on the Falls of Bells Ferry project, and later on the Rivercrest and Knollwood projects as well. Based on Mr. Wright's recommendations, AIMCO awarded over $15.5 million in contracts to SHEP Services to serve as the general contractor on the Falls of Bells Ferry, Rivercrest, and Knollwood projects.

In 2007, Shepard notified AIMCO officials that it had made weekly or bi-weekly cash payments to Mr. Wright as part of a kickback scheme. Shepard met with AIMCO's investigative director, who testified at trial. The investigator prepared a declaration that Shepard signed ("Shepard's Declaration"), which described the kickback scheme and Appellants' involvement in it.

AIMCO subsequently initiated an investigation, reviewed Mr. Wright's bank accounts, and discovered a high frequency of large cash deposits into bank accounts shared by Mr. and Mrs. Wright. Many of the cash deposits occurred on the same day, all in amounts of less than $10,000.[3] Although Mr. Wright earned a $95,000 salary from AIMCO and earned approximately $40,000 per year from S&D Associates, he deposited the following amounts in his account: $41,470 between February and March 2006; $122,200 between May and June 2006; $62,097 between September and October 2006; and $688,116 between April and May 2007. On one occasion, Mrs. Wright withdrew $55,000 from the shared bank account. Additionally, shortly after Shepard issued a $100,000 check to S&D Associates — a company owned by Mr. and Mrs. Wright — Mr. Wright purchased a Porsche sports car, issuing an S&D Associates check in the amount of $70,597.

Mr. Wright admitted that prior to his AIMCO employment, he had lived in a house purchased for $190,000. During his subsequent AIMCO employment, he and his wife bought beach property in July 2006, paying a monthly mortgage of approximately $3,000. They also purchased a $940,000 house in January 2007, paying a monthly mortgage of approximately $5,000. S&D Associates had an interest in the beach property. Additionally, Mr. Wright bought a significant amount of fine jewelry for himself and his wife.

In the course of its investigation, AIMCO discovered that after it paid SHEP Services as the general contractor, SHEP Services had not paid its subcontractors and suppliers. The unpaid subcontractors filed mechanic's liens and lawsuits against the three apartment projects. AIMCO paid approximately $2.13 million to resolve the subcontractors' claims.

---

[3] The trial court took judicial notice that financial institutions are required to report deposits of cash in excess of $10,000.

The AIMCO Group subsequently filed suit against Appellants, Shepard, and SHEP Services, and the case against those defendants proceeded to a joint trial.[4] Following the presentation of evidence, the jury returned a verdict in favor of the AIMCO Group on its breach of fiduciary duty and fraud claims and awarded it general damages ($2.13 million), attorney fees and costs ($500,000), and punitive damages ($75,000).[5] The trial court entered a judgment upon the jury's verdict. Thereafter, Appellants filed a motion for j.n.o.v., or in the alternative, for new trial or for remittitur. The trial court denied the motions, and this appeal followed.

1. Appellants contend that the trial court erred in denying their motion for j.n.o.v., arguing that the AIMCO Group lacked standing to recover damages and failed to substantiate its damages with credible evidence.

(a) Appellants contend that OP Property Management was not entitled to recover any damages because it was merely a "pass-through" entity that suffered no loss of its own. We agree.

There is no evidence that OP Property Management incurred any losses as a result of the kickback scheme. Significantly, the evidence shows that OP Property Management did not pay any money of its own to fund the three construction sites. Rather, OP Property Management would receive a fee for managing the AIMCO's construction projects, which OP Property Management received in this case. There was no evidence that it suffered any losses or was otherwise damaged by any breach of duty or fraud. Since OP Property Management did not present evidence to establish its own damages as a result of any breach of a fiduciary duty or fraud, it did not have a cause of action against Appellants. Cf. *Nash v. Studdard*, 294 Ga. App. 845, 848 (1), 850 (2) (a) (670 SE2d 508) (2008) (holding that plaintiff had no causes of action for fraud and breach of fiduciary duty since plaintiff failed to establish actual damages resulting from fraud or breach). Therefore, the trial court erred in denying Appellants' motion for j.n.o.v. as to OP Property Management. Accordingly, we reverse the portion of the judgment awarding OP Property Management recovery against Appellants.[6]

(b) Appellants also contend that since AIMCO was not a contracting party on the three construction projects, it was not entitled to

---

[4] Shepard and SHEP Services are not parties to this appeal.

[5] The jury assessed general damages of $630,000, attorney fees and costs in the amount of $250,000, and $50,000 in punitive damages against Appellants.

[6] Inasmuch as OP Property Management had no tort claim for breach of fiduciary duty or fraud that survived, its derivative claims for punitive damages and attorney fees also failed. Cf. *ULQ, LLC v. Meder*, 293 Ga. App. 176, 182 (4) (666 SE2d 713) (2008).

recover for any damages as result of the kickback scheme. Their arguments are misplaced.

Whether AIMCO was a party to the three contracts was not relevant to the claims asserted by AIMCO, because its claims — breach of fiduciary duty and fraud — lie in tort, not contract. See OCGA § 51-1-1 ("A tort is the unlawful violation of a private legal right other than a mere breach of contract, express or implied."). As shown below, AIMCO established that Mr. Wright owed it a fiduciary duty, that he breached such duty, and that AIMCO suffered damages thereby.

(c) Appellants also contend that the losses claimed by AIMCO were too speculative to be awarded as damages. We disagree.

> [T]he rule against recovery of speculative damages relates primarily to speculation regarding proximate cause rather than extent. Once a plaintiff establishes that damages proximately flow from the defendant's alleged conduct, mere difficulty in fixing their exact amount should not be a legal obstacle to recovery.

(Citations and punctuation omitted.) *Freeman v. Pittman*, 220 Ga. App. 672, 674 (2) (469 SE2d 543) (1996). "[I]f a plaintiff can show with reasonable certainty the total amount of damages and the degree to which those damages are attributable to defendant, that is sufficient to support an award." *CRS Sirrine, Inc. v. Dravo Corp.*, 219 Ga. App. 301, 303 (1) (464 SE2d 897) (1995).

Here, the jury returned a total verdict of $2.705 million, including $465,000 in damages awarded to AIMCO apportioned among the Appellants. At trial, AIMCO's in-house counsel testified at length that AIMCO had to pay a total of approximately $2.13 million to settle the claims of subcontractors who were not paid by Shepard when he diverted money to Appellants in the kickback scheme. AIMCO's in-house counsel testified that he had personal knowledge of the amounts paid, because he was the person primarily responsible for resolving the subcontractors' demand letters, mechanic's liens, and lawsuits.

While Appellants contend that the damages were not apportioned to them according to their respective culpability and did not directly correspond to any specific evidence in the record, their argument is unsupported by law and is otherwise without merit. "Indeed, we have often upheld jury verdicts that awarded less than the amount proven at trial, holding only that the amount must be within the range of damages shown," not that the amount may only be a lesser amount if calculated according to some proven formula.

(Footnote omitted.) *Gold Kist v. Base Mfg., Inc.*, 289 Ga. App. 690, 693 (1) (658 SE2d 228) (2008). Based on the foregoing evidence, the jury had a sufficient basis to allow a reasonable calculation of damages against Appellants. See id. at 693-694 (the amount of the jury verdict will be upheld if it is within the range of damages shown); *City of Atlanta v. WH Smith Airport Svcs.*, 290 Ga. App. 206, 210 (4) (659 SE2d 426) (2008) ("Where the amount of a verdict is within the range of testimony it will not be disturbed on appeal.") (citation omitted); see also *Royalston v. Middlebrooks*, 303 Ga. App. 887, 893 (5) (696 SE2d 66) (2010) (In arriving at how to express the different degrees of culpability of joint tortfeasors "in mathematical terms, the jury was not bound by any specific formula; instead, the matter was to be determined according to the enlightened conscience of the fair and impartial jury.") (punctuation and footnote omitted).

2. Appellants contend that the trial court erred in denying their motion for j.n.o.v., arguing that AIMCO failed to prove that Appellants owed them a duty. Appellants' contention is without merit.

(a) *Mr. Wright's Duty*

A fiduciary or confidential relationship arises

> where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent, etc.

OCGA § 23-2-58. Such relationship may be created by law, contract, or the facts of a particular case. See *Bienert*, supra, 276 Ga. App. at 624 (2) (a).

Moreover, since "a confidential relationship may be found whenever one party is justified in reposing confidence in another, the existence of a confidential or fiduciary relationship is generally a factual matter for the jury to resolve." (Citations and footnote omitted.) Id. Where an agency relationship exists, the agent has a fiduciary duty to his principal. See *Nilan's Alley v. Ginsburg*, 208 Ga. App. 145 (1) (430 SE2d 368) (1993).

Here, the trial evidence supports the conclusion that a fiduciary relationship arose between Mr. Wright and AIMCO. The record shows Mr. Wright solicited and reviewed bids on AIMCO's behalf and was tasked with making recommendations on such bids. See, e.g., *Nilan's Alley*, supra, 208 Ga. App. at 145 (1) (employee had fiduciary obligation to employer where he was employer's agent for soliciting offers to purchase employer's products). Additionally, Mr. Wright

reviewed applications for payment to verify the work accomplished, and AIMCO relied on his approval to pay SHEP Services. Cf. *Benson v. McMillan*, 261 Ga. App. 78, 82 (1) (581 SE2d 707) (2003) (evidence established a confidential relationship when employer entrusted employee with significant financial responsibility and authority).

Moreover, as the designated representative for companies owned by AIMCO — the three single-purpose entities and OP Property Management — Mr. Wright was given the authority to approve changes in scope of work, contract documents, scheduling, and costs. See OCGA § 10-6-1 ("The relation of principal and agent arises wherever one person, expressly or by implication, authorizes another to act for him[.]"); see also *Hanson Staple Co. v. Eckelberry*, 297 Ga. App. 356, 358 (1) (677 SE2d 321) (2009) (to the extent the employer authorizes an employee to act on its behalf, the employee is the employer's agent). Contrary to Mr. Wright's contention, even if AIMCO did not actually execute any contract change orders that he signed, he was still given the authority to approve contract changes, which would have bound AIMCO to pay for work done pursuant to approved change orders. Under these facts, the jury was authorized to find that Mr. Wright was an agent of AIMCO and owed fiduciary obligations to it. See *Sitton v. Print Direction, Inc.*, 312 Ga. App. 365, 372 (5) (718 SE2d 532) (2011) (evidence that employee had the authority to solicit business on employer's behalf and to bind employer for certain obligations authorized finding that employee owed fiduciary duty to employer); *Hilb, Rogal & Hamilton Co. &c. v. Holley*, 295 Ga. App. 54, 58 (2) (670 SE2d 874) (2008) (same).

Since there was evidence establishing the existence of Mr. Wright's fiduciary duty to AIMCO, he had a duty to AIMCO to refrain from participating in the fraud and to disclose the existence of the kickback scheme. See *Goldston v. Bank of America Corp.*, 259 Ga. App. 690, 696 (577 SE2d 864) (2003) ("[A] fiduciary relationship encompasses a duty to disclose so that suppression of a material fact which a party is under an obligation to communicate constitutes fraud.") (punctuation, footnote and emphasis omitted); OCGA § 23-2-53 ("Suppression of a material fact which a party is under obligation to communicate constitutes fraud.").

(b) *Duty Owed by Mrs. Wright and S&D Associates*

Mrs. Wright and S&D Associates contend that, since they had no fiduciary obligation to AIMCO, they could not be liable for breach of a fiduciary duty or for failing to disclose the kickback scheme. Their argument is misplaced. AIMCO's claims against Mrs. Wright and S&D Associates were not based on an independent duty owed to

AIMCO, but were based on allegations that they aided, abetted, and conspired in Mr. Wright's fraud and breach of his fiduciary duty. As discussed in Division 3 below, the evidence was sufficient to show that they were liable for aiding and abetting and conspiring with Mr. Wright.

3. Appellants also contend that the trial court should have granted their motion for new trial for the same reasons it urges that the trial court should have granted their motion for j.n.o.v. We disagree.

(a) *Claims Against Mr. Wright*

(i) *Breach of Fiduciary Duty*

To support a claim of breach of fiduciary duty, a plaintiff must prove the existence of such duty, breach of that duty, and damages proximately caused by the breach. *Bienert*, supra, 276 Ga. App. at 623. When a fiduciary relationship exists, the agent may not make a profit for himself out of the relationship to the injury of the principal. See *White v. Shamrock Bldg. Systems*, 294 Ga. App. 340, 346 (4) (669 SE2d 168) (2008).

As previously discussed, there was evidence to establish Mr. Wright's fiduciary duty, and AIMCO presented further evidence to establish Mr. Wright's breach of this duty. Notably, the trial evidence shows that Mr. Wright used his position as Senior Director of Construction Services to profit from a fraudulent kickback scheme to his own advantage and to the detriment of AIMCO. Cf. *Bienert*, supra, 276 Ga. App. at 625 (2) (b) (defendant breached her fiduciary duty as the plaintiff's representative when she profited from her misconduct to the detriment of the plaintiff); *Benson*, supra, 261 Ga. App. at 81-82 (1) (defendant's misconduct as plaintiff's representative that caused plaintiff significant expenses was sufficient to establish breach of a fiduciary duty).

(ii) *Fraud*

In order to establish a claim of fraud under Georgia law, a plaintiff must prove "(1) false representation by a defendant; (2) scienter; (3) intention to induce the plaintiff to act or refrain from acting; (4) justifiable reliance by the plaintiff; and (5) damage to the plaintiff." (Citations and punctuation omitted.) *Pyle v. City of Cedartown*, 240 Ga. App. 445, 447 (1) (524 SE2d 7) (1999). When a fiduciary relationship has been established, "silence when one should speak, or failure to disclose what ought to be disclosed, is as much a fraud in law as is an actual false representation." (Punctuation and footnote omitted.) *Goldston*, supra, 259 Ga. App. at 694.

The trial evidence authorized the jury's verdict that Mr. Wright defrauded AIMCO. Given that Mr. Wright owed a fiduciary duty to

AIMCO, Mr. Wright had a duty to disclose and refrain from participating in the kickback scheme. See, e.g., *Spratlin, Harrington & Thomas, Inc. v. Hawn*, 116 Ga. App. 175, 181-182 (2) (156 SE2d 402) (1967) (an agent defrauded principal by failing to disclose material facts that resulted in profit to agent); *Larkins v. Boyd*, 205 Ga. 69, 73 (1) (52 SE2d 307) (1949) (agent committed fraud by profiting from agency relationship to detriment of principal and also by failing to disclose all pertinent facts that jeopardized the principal's interests). Significantly, AIMCO relied on Mr. Wright's review and approval of the general contractor's applications for payment, which included a certification that Shepard had paid his subcontractors. During the time Mr. Wright approved Shepard's applications for payment, he was receiving frequent and routine cash payments from Shepard. In light of this evidence, the jury was authorized to conclude that Mr. Wright approved Shepard's applications for his own benefit as part of the kickback scheme, resulting in over $2.13 million in damages to AIMCO.

(b) *Claims against Mrs. Wright and S&D Associates*

AIMCO's claims against Mrs. Wright and S&D Associates were that they aided and abetted Mr. Wright's breach of his fiduciary duty and conspired with Mr. Wright to defraud AIMCO.

"To recover damages for a civil conspiracy claim, a plaintiff must show that two or more persons, acting in concert, engaged in conduct that constitutes a tort." (Citation and punctuation omitted.) *Mustaqeem-Graydon v. SunTrust Bank*, 258 Ga. App. 200, 207 (6) (573 SE2d 455) (2002).

> Civil conspiracy is an act which is by its very nature covert and clandestine, and usually not susceptible of proof by direct evidence. Concert of action, amounting to conspiracy, may be shown by circumstantial as well as direct evidence. It is not necessary to prove an express agreement or compact among the wrongdoers; their common design may be inferred from the nature of the acts done, the relation between them, their mutual interests in the matter, and other circumstances.

(Citations and punctuation omitted.) *First Federal Savings Bank v. Hart*, 185 Ga. App. 304, 305 (2) (363 SE2d 832) (1987). Once a conspiracy is proven, any actionable deed by one of the conspirators is chargeable to all. See *Turnage v. Kasper*, 307 Ga. App. 172, 179 (1) (a) (704 SE2d 842) (2010).

A plaintiff may recover for aiding and abetting breach of fidu-

ciary duty upon proof of the following elements:

> (1) through improper action or wrongful conduct and without privilege, the defendant acted to procure[7] a breach of the primary wrongdoer's fiduciary duty to the plaintiff; (2) with knowledge that the primary wrongdoer owed the plaintiff a fiduciary duty, the defendant acted purposely and with malice and the intent to injure;[8] (3) the defendant's wrongful conduct procured a breach of the primary wrongdoer's fiduciary duty; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff.

(Citations and footnotes omitted.) *Insight Tech.*, supra, 280 Ga. App. at 25-26 (1) (a).

The evidence in this case was sufficient to support a finding that Mrs. Wright and S&D Associates acted in concert with and aided and abetted Mr. Wright's fraud and breach of his fiduciary duty. Significantly, Mrs. Wright was present on at least two occasions when Shepard delivered money to Mr. Wright. She was a joint owner of the bank account used by Mr. Wright to deposit and transfer large sums of cash, and she personally withdrew large amounts of money from that account. When confronted with AIMCO's notice to produce all documents showing the source of the many cash deposits, Mrs. Wright confirmed that she had produced nothing. As to S&D Associates, which Mrs. Wright owned with Mr. Wright, Mr. Wright deposited Shepard's $100,000 check into S&D Associates' bank account and then purchased a Porsche car using S&D Associates' bank account. Based on Mrs. Wright's relationship with Mr. Wright, the fact that they owned S&D Associates together, and the Wrights' substantial purchases — a $940,000 house, a beach property, a Porsche sports car, and fine jewelry — during the time of the kickback scheme, the jury was authorized to conclude that Mrs. Wright and S&D Associates acted in concert with and aided and abetted Mr. Wright's fraud. Cf.

---

[7] The word "procure" . . . does not require the lending of assistance in the actual perpetration of the wrong done by another; but if one, acting only through advice, counsel, persuasion, or command, succeeds in procuring any person to commit an actionable wrong, the procurer becomes liable for the injury, either singly or jointly, with the actual perpetrator.

(Citation and punctuation omitted.) *Insight Tech., Inc. v. FreightCheck, LLC*, 280 Ga. App. 19, 25 (1) (a), n. 12 (633 SE2d 373) (2006).

[8] An act is malicious when done with the knowledge of plaintiff's rights and with intent to interfere therewith. Persuading a person to break a contract for the indirect purpose of injuring the plaintiff or benefitting the defendant at the expense of the plaintiff is a malicious and actionable act if injury arises from it. See *Insight Tech.*, supra, 280 Ga. App. at 25 (1) (a), n. 13.

*McIntee v. Deramus*, 313 Ga. App. 653 (722 SE2d 377) (2012) (holding that the evidence supported the jury's finding of a civil conspiracy for conversion of plaintiff's investment because two LLC shareholders both had access to the investment account, they transferred the investment money to their LLC corporate account, and they disbursed corporate funds to one LLC member without the knowledge or permission of plaintiff); *Prescott v. Carithers*, 158 Ga. App. 366, 368 (1) (280 SE2d 361) (1981) ("Where transactions between relatives are under review, slight circumstances are often sufficient to induce belief on the part of a jury that there was fraud or collusion between the parties.") (citations and punctuation omitted). As there was slight evidence to support the verdict, the trial court did not err in denying Appellants' motion for new trial with respect to AIMCO's claims.

4. Appellants contend that the trial court erred by admitting into evidence Shepard's Declaration and allowing AIMCO's investigator and in-house counsel to testify. We disagree.

(a) Appellants assert that Shepard's Declaration and the investigator's testimony regarding Shepard's statements were inadmissible hearsay.

In addition to suing Appellants, AIMCO also sued Shepard and SHEP Services, and all defendants went to trial together. At trial, Appellants objected to the investigator's testimony regarding his interview of Shepard and to the admissibility of Shepard's written statement on hearsay grounds. The trial court admitted the testimony and the declaration over Appellants' objection. Appellants did not request a limiting instruction.

> [U]nder OCGA § 24-3-31, the admission by a party is generally admissible when offered by the other side. One exception to this rule is that the admission of one of several parties with no joint interest is inadmissible "unless the issue is of such a character that the effect of the admission can be confined to the one party alone." OCGA § 24-3-31 (2). . . .
>
> It is true that the admissions of one defendant cannot be considered as evidence against another co-defendant. [However,] [t]his merely means that when one defendant admits wrongful conduct, the conduct is not imputed to the co-defendant by virtue of the admission. But the admission may still be used to establish the admitting defendant's conduct even if the admission ultimately works to the detriment of the non-admitting defendant.

(Citations and punctuation omitted.) *Walker v. Aderhold Properties*, 303 Ga. App. 710, 715 (2) (694 SE2d 119) (2010); see also *KHD Deutz of America Corp. v. Utica Mut. Ins. Co.*, 220 Ga. App. 194, 197 (3) (469 SE2d 336) (1996).

In other words, the investigator's testimony and Shepard's Declaration were admissible solely to demonstrate Shepard's participation in the kickback scheme, and the fact that this evidence may have contributed to an ultimate finding of liability on the part of the Appellants does not alter this result. *Walker*, supra, 303 Ga. App. at 715 (2). Since the investigator's testimony and Shepard's declaration were admissible as to Shepard in the joint trial, the court did not err in admitting them. Id. Moreover, contrary to Appellants' claim otherwise, the trial court did not err in failing to instruct the jury to limit its consideration of the evidence only as to Shepard's liability, because Appellants did not request such instruction. See *Johnson v. Sullivan*, 247 Ga. 663, 665 (2) (278 SE2d 640) (1981).

(b) Appellants also contend that the trial court erred by allowing AIMCO's in-house counsel to testify regarding AIMCO's damages, claiming that such testimony violated the "best evidence" rule[9] and was subject to speculation or conjecture. However, Appellants waived these issues by failing to interpose a timely contemporaneous objection when the challenged testimony was presented in court. See *Humphrey v. Homecomings Financial, LLC*, 304 Ga. App. 83 (1) (695 SE2d 322) (2010) ("In order to raise on appeal an impropriety regarding the admissibility of evidence, the specific ground of objection must be made at the time the evidence is offered, and the failure to do so amounts to a waiver of that specific ground.") (footnote omitted).

*Judgment affirmed in part and reversed in part. Ellington, C. J., and Doyle, P. J., concur.*

DECIDED MARCH 29, 2012 —
RECONSIDERATION DENIED APRIL 12, 2012 — ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮

*Taylor, English & Duma, Joseph C. Sullivan, Louis R. Cohan*, for appellants.

*McConnell, Sneed & Cohen, Robert M. Sneed, Jr.*, for appellees.

---

[9] "The best evidence which exists of a writing sought to be proved shall be produced, unless its absence shall be satisfactorily accounted for." OCGA § 24-5-4 (a).