**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**June 19, 2013**

# In the Court of Appeals of Georgia

A13A0312, A13A0313. LEE et al. v. CHOI; and vice versa.

BOGGS, Judge.

Following a jury trial in this dispute involving alleged breach of contract and breach of fiduciary duty, both parties appeal. In Case No. A13A0312, Ki Tae Lee, individually and as executor of the estate of her deceased husband, John Blackwell, (hereinafter "the Blackwells") appeals arguing that a contract considered by the jury was unenforceable, and that the trial court erred in failing to give requested jury instructions. In Case No. A13A0313, Se Ill Choi appeals, arguing that the trial court erred in denying his motion for a directed verdict on the Blackwells' claim for breach of fiduciary duty and in entering two separate judgments. For the following reasons, we reverse in Case No. A13A0312 and affirm in Case No. A13A0313.

Construed in favor of the verdict, the record reveals that in 1996, John Blackwell was seriously injured in an automobile accident. Blackwell's wife was Korean and spoke little English, and needed assistance communicating with Blackwell's doctors. In late 1996 or early 1997, the Blackwells hired Choi as an interpreter. In his testimony, Choi explained that the wife needed help to "establish her household" and that she asked him to help her take care of Blackwell. Choi moved into the Blackwell home, and while he did not receive pay, the Blackwells provided him with a bedroom and an office, food, a computer and cell phone, health insurance, and a car. The Blackwells told him he "will be taken care of, no need to worry about jobs; we will be taking care of you."

At some point, Choi began assisting with the family's finances, including the payment of utilities and other expenses. He was also involved in preparing the family's income taxes and managing Blackwell's care, including ensuring that he received Medicare benefits. Choi also cared for the Blackwells' son, taking him to various activities and attending conferences with his teachers. In 2001, Blackwell executed a power of attorney naming his wife as attorney-in-fact, and naming Choi as her successor in the event the wife was unable to serve. The power of attorney provided authority for bank, business, real property, personal property, tax, and

insurance transactions, borrowing money, the commencement and prosecution of disputes, and granted access to safe deposit boxes.[1]

At some point in 2005, Choi testified that he requested $200,000 from the Blackwells because he overheard a conversation involving Choi's wife that made him question her "commitment about the promises that she made" to "support [him] for [his] life." The Blackwells agreed instead to open a joint investment account naming Choi and the wife as the account holders. The account was funded with $100,000 from Blackwells' trust account. The Blackwells agreed that Choi could keep for himself half of any earnings made from investing the $100,000.

In 2008, Choi contacted an attorney to assist him in formalizing the "verbal lifetime support" he claimed was promised to him by the Blackwells, but no formal agreement was reached at that time. In 2009, the parties signed an agreement "to support Choi for his lifetime." This agreement was signed by Choi and Blackwell's wife who also signed for Blackwell as his attorney-in-fact.

In 2010, Blackwell's wife fired Choi after he returned from a trip with his niece. Afterward, on June 6, 2010, the parties signed an agreement in which the

---

[1]The record also contains a 2007 "Power of Attorney" appointing Choi as Blackwell's attorney-in-fact. But Blackwell did not sign this power of attorney; it was signed by witnesses only.

Blackwells agreed to pay Choi "for the work CHOI has done for Blackwell." This agreement was signed by Choi and Blackwell's wife. The two also signed this agreement for Blackwell as his attorneys-in-fact. Around the same time, the Blackwells placed a "hold" or "freeze" on the joint investment account, but when the hold was lifted, Choi withdrew the $49,000 remaining and deposited it into his own personal banking account.

In July 2010, Choi filed a complaint for breach of the 2009 and 2010 agreements, breach of the duty of good faith and fair dealing, promissory estoppel, reimbursement for certain payments, declaratory judgment, and attorney fees. The Blackwells answered, asserted affirmative defenses, and counterclaimed for conversion and breach of fiduciary duty.

The Blackwells moved for summary judgment on the 2009 and 2010 agreements, but the motion was denied, and the case proceeded to trial. Midway through the trial, the court granted a directed verdict in favor of the Blackwells on the 2009 agreement finding that there was no mutual consideration and that the agreement was vague and uncertain. The court also granted the Blackwells a directed verdict on Choi's claims for breach of duty of good faith and fair dealing and

promissory estoppel. The court denied the Blackwells' motion for a directed verdict with respect to the 2010 agreement and the declaratory judgment.

The jury found in favor of Choi on his breach of contract claim based upon the 2010 agreement (and the claim for reimbursement) and awarded him $450,000, and $80,880.10 in attorney fees, but found in favor of the Blackwells on their breach of fiduciary duty claim, awarding them $49,000. The jury found in favor of Choi on the Blackwells' claim for conversion and denied their claim for punitive damages. The trial court entered a judgment accordingly.

*Case No. A13A0312*

1. The Blackwells contend that the trial court erred in denying their motion for a directed verdict on the 2010 agreement. We agree. That agreement, signed by Choi as attorney-in-fact for Blackwell, provided in relevant part:

> WHEREAS, BLACKWELL desire to express in writing their agreement [sic] to pay CHOI minimum of $450,000.00 immediatly [sic] for the work CHOI has done for Blackwell. Now with this payment all previous agreements and wills are null and void between two parties. CHOI is willing to provide service in the future if acceptable working condition is provided.

5

The Blackwells argued that "work that has been done" is insufficient consideration, and that other language of the agreement exemplifies only an "unenforceable agreement to agree." The trial court ruled: "the fact that Mr. Choi gave up his right to any other lawsuits or any prior action is consideration for which that could be enforceable." But this agreement did not provide that Choi would give up the right to other lawsuits or prior action. Rather, the agreement purported to provide as consideration "the work Choi has done for Blackwell," and merely provided that "all previous agreements and wills are null and void."

With regard to "the work Choi has done for Blackwell," it is well-settled that "past consideration will not support a subsequent promise." (Citation omitted.) *Whitmire v. Watkins*, 245 Ga. 713, 714 (267 SE2d 6) (1980). See *Burns v. Dees*, 252 Ga. App. 598, 604 (1) (a) (i) (557 SE2d 32) (2001) (past consideration cannot support the existence of a contract). Therefore, an agreement to pay Choi for work he has already done is unenforceable. See *O'Neal v. Home Town Bank of Villa Rica*, 237 Ga. App. 325, 327 (1) (514 SE2d 669) (1999) (contract to pay salary for services already rendered lacks consideration).

The only possible consideration remaining under the 2010 agreement is that "all previous agreements and wills are null and void." Choi argues that this provision

6

includes the 2009 agreement, the oral agreement under which Choi claimed that the Blackwells promised him lifetime support, his will "leaving everything" to Blackwell's wife, and a "Korean agreement." The trial court found the 2009 agreement unenforceable because it lacked mutual consideration and was vague and uncertain. Any oral agreement to provide Choi "lifetime support" is unenforceable on this same basis. There is no indication of what was to be encompassed in "lifetime support" and no explanation how it was to be provided. Any such promise without any further particularity fails to support an enforceable contract. See, e.g., *Reuben v. First Nat. Bank of Atlanta*, 146 Ga. App. 864, 866 (247 SE2d 504) (1978) (promise to make construction loans without further particularity unenforceable). Therefore, the 2009 agreement and promise of lifetime support do not provide consideration for the 2010 agreement.

With regard to the will, the record shows that in 2009 Choi executed a will which named Blackwell's wife as the "Personal Representative of [the] Will" and the sole beneficiary. If the will was null and void pursuant to the 2010 agreement, the loss of the wife's rights under the will could not be consideration for her and her husband's obligation to pay Choi $450,000. See *Tillinghast v. Banks*, 14 Ga. 649, 652 (1854) ("A valuable consideration consists in some right, interest, profit, or benefit

7

accruing to the party who makes the contract; or some forbearance, detriment, loss, responsibility or act, labor or service, on the other side.[Cit.]"). The fourth agreement Choi relies upon as consideration, a "Korean agreement," is unenforceable because it contains no mutual exchange of promises, but rather only provided what would occur if Choi left the Blackwell home.[2] See OCGA § 13-3-42 ("[t]o constitute consideration, a performance or a return promise must be bargained for by the parties to a contract").

Because the agreements Choi relies upon either are unenforceable or cannot provide consideration for the payment of $450,000, the 2010 agreement is itself unenforceable as a matter of law and should not have been submitted for the jury's consideration. See *Fellows v. All Star*, 272 Ga. App. 262, 266-267 (3) (612 SE2d 86) (2005). The trial court therefore erred in denying the Blackwells' motion for directed verdict on Choi's claim for breach of the 2010 agreement. See id.

2. The Blackwells' remaining enumeration is moot in light of our holding in Division 1.

*Case No. A13A0313*

---

[2]It provided in part that if Choi left the Blackwell household, he would not sue and would not ask for "money, house or anything equivalent."

3. Choi contends that the trial court erred in denying his motion for a directed verdict on the Blackwells' claim for breach of fiduciary duty based upon Choi's withdrawal of the $49,000 remaining in the joint account he held with Blackwell's wife. He argues that there was no fiduciary duty owed to Blackwell's wife with respect to the joint account, and that he did not breach any fiduciary duty owed to the Blackwells because he "had every right to withdraw the funds in the Joint Account set up for his benefit." He argues further that there were no damages because he had an equal right to the funds. "We must affirm the denial of a directed verdict if there is any evidence to support the jury's verdict, and in conducting this analysis we must construe the evidence in the light most favorable to the party who prevailed in the court below." (Citation omitted.) *Lee v. Swain*, 291 Ga. 799, 800 (1) (733 SE2d 726) (2012).

The Blackwells alleged that Choi breached his fiduciary duty pursuant to the power of attorney he had over Blackwell's affairs by acting contrary to Blackwell's instructions by withdrawing the funds for his own use. The evidence showed that Choi was the successor agent of Blackwell in the event Blackwell's wife was unable to serve. Choi accepted the appointment acknowledging that he owed Blackwell "a duty of loyalty and good faith," and that he must use the powers granted to him only

9

for the benefit of Blackwell. He also acknowledged that he "must protect and conserve, and exercise prudence and caution in [his] dealings with, [Blackwell's] funds and other assets."

The $100,000 investment account was funded from Blackwell's trust account (with no contribution from Choi as he admitted ), and was opened in the name of both Blackwell's wife and Choi. The Blackwells testified that the parties agreed to allow Choi to use the account for investment purposes and that Choi could keep half of any earnings he made from investments. The evidence showed that by 2006, Choi had lost half of the funds in trading. He then withdrew the remaining $49,000 of the initial investment of $100,000 after his employment was terminated and deposited it in his personal account.

The evidence showed further that Choi had access to the Blackwells' financial information and was in a confidential relationship with them based upon his duties as an interpreter and assistant. Choi himself explained that he was the "lifeline" for the Blackwells, and that he, over the course of many years, lived with the Blackwells and performed various duties, assisting the family with financial affairs, healthcare decisions, and decisions with regard to the Blackwells' son.

"A fiduciary or confidential relationship arises where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent, etc." *Wright v. Apt. Inv. &c*, 315 Ga. App. 587, 592 (2) (a) (726 SE2d 779) (2012), citing OCGA § 23-2-58. "Such relationship may be created by law, contract, or the facts of a particular case." (Citation omitted.) *Wright*, supra.

The evidence presented was sufficient to show that Choi had a fiduciary duty to Blackwell pursuant to the power of attorney, see, e.g., *Hodges v. Callaway*, 279 Ga. 789, 794 (3) (621 SE2d 428) (2005), and also had a fiduciary duty to both Blackwells pursuant to his relationship with them, in which he was in a position of trust and confidence, was entrusted with financial responsibility and authority, and was privy to personal information. See *Wright*, supra, 315 Ga. App. at 592 (2) (a); *Benson v. McMillan* 261 Ga. App. 78, 81-82 (1) (581 SE2d 707) (2003) (fiduciary relationship between employee and employer where employee was entrusted with financial responsibility and authority). And because there was evidence presented that the Blackwells intended for Choi to be entitled to only half of the earnings made from the initial $100,000 investment, and not to any portion of the $100,000, there was

11

sufficient evidence to support the jury's conclusion that Choi breached his fiduciary duty to both Blackwell and his wife in withdrawing the remaining $49,000 in the investment account, and that he was not entitled to retain those funds.

4. Choi's remaining enumeration is moot in light of our holding in Division 1.

*Judgment reversed in Case No. A13A0312. Judgment affirmed in Case No. A13A0313. Doyle, P. J. and McFadden, J., concur.*

ON MOTION FOR RECONSIDERATION.

Choi argues that the 2010 agreement was a settlement agreement for which the compromise of a disputed claim is valid consideration. He points to parole evidence to establish that the parties intended the document as a settlement agreement. But "in construing a contract, courts 'must look to the four corners of the document' and cannot consider parol evidence unless there is an ambiguity that cannot be resolved by employing the rules of contract construction." *DeKalb County v. City of Decatur*, 297 Ga. App. 322, 325 (677 SE2d 391) (2009). Choi makes no argument the agreement is ambiguous and we find no ambiguity.

The 2010 agreement provided in relevant part that the parties wished to "express in writing their agreement to pay CHOI minimum of $450,000 immediat[e]ly for the work CHOI has done for Blackwell. Now with this payment all previous agreement and wills are null and void. Choi is willing to provide service in the future if acceptable working condition is provided." There is no language in the document revealing a disputed claim or disagreement, and the document was not labeled as such. The cases cited by Choi are distinguishable. Compare, e.g., *Matrix Financial Serv. v. Dean*, 288 Ga. App. 666, 666-667 (1) (655 SE2d 290) (2007) (physical precedent only) (pursuant to settlement agreement entered into following foreclosure, lender agreed to reduce the amount borrower owed under the loan and to stay the

dispossessory action); *Rogers v. Demoteguin*, 193 Ga. App. 480, 482-483 (1) (388 SE2d 10) (1989) (agreement was reached that plaintiff would forbear breach of contract suit in return for defendant to complete remodeling work); *Berry v. Atlanta Outdoor Advertising*, 164 Ga. App. 541, 542 (298 SE2d 268) (1982) ("Forbearance to sue on an obligation that is due is a valid consideration sufficient to support a contract. The agreement to forbear must be for a specific period of time.[Cits.]")

The 2010 agreement unambiguously attempts to put to writing some prior oral agreement that Choi would be paid for the work he performed, revoking all previous agreements. It is therefore simply an employment contract, albeit made after the fact, that fails for lack of consideration. Because we are required to construe only the four corners of the 2010 agreement which unambiguously establish a contract, and not a settlement agreement, Choi's argument on motion for reconsideration fails.

*Motion for reconsideration denied.*