**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and BRANCH, J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 12, 2014**

# In the Court of Appeals of Georgia

A13A2312. LESLIE v. DOE.                                                    JE-116

ELLINGTON, Presiding Judge.

The State Court of Fulton County granted summary judgment in favor of John Doe, the "phantom driver" defendant, in this personal injury suit arising from a one-car accident. The court found that Tyrone Leslie, the plaintiff driver, had failed to present evidence corroborating his claim that Doe's actions forced him from the roadway, causing the accident. Absent such corroboration, a prerequisite for Leslie to recover against his uninsured motorist carrier,[1] the court entered judgment in Doe's favor. Leslie contends that the court erred because the affidavit and deposition testimony of an eyewitness provided the requisite corroboration. Because the court erred in disregarding the eyewitness's affidavit under the circumstances of this case,

---

[1] See footnote 2, infra.

and because the eyewitness's affidavit and deposition testimony provide sufficient corroboration, we reverse the grant of summary judgment.

Absent some evidence of physical contact between the insured's vehicle and the unknown vehicle, an eyewitness must corroborate the insured's description of how the accident occurred. OCGA § 33-7-11 (b) (2).[2] See *Yates v. Doe*, 190 Ga. App. 367 (378 SE2d 739) (1989) (Without evidence of contact between the vehicles or eyewitness testimony corroborating the appellant's claim of how the phantom driver caused the accident, as required by OCGA § 33-7-11 (b) (2), the trial court properly

_____

[2] This Code section provides, in relevant part:

A motor vehicle shall be deemed to be uninsured if the owner or operator of the motor vehicle is unknown. . . . [I]n order for the insured to recover under the endorsement where the owner or operator of any motor vehicle which causes bodily injury or property damage to the insured is unknown, actual physical contact shall have occurred between the motor vehicle owned or operated by the unknown person and the person or property of the insured. *Such physical contact shall not be required if the description by the claimant of how the occurrence occurred is corroborated by an eyewitness to the occurrence other than the claimant.*

(Emphasis supplied.) OCGA § 33-7-11 (b) (2).

2

granted summary judgment to the uninsured motorist carrier.) By requiring a corroborating eyewitness to the actual involvement of a John Doe driver and his phantom automobile under such circumstances,

> [i]t was not the intent of the legislature to create a rule which would arbitrarily preclude coverage[.] . . . What the legislature intended to be established with reasonable certainty, so as to preclude fraudulent claims, is the *existence* of a phantom automobile which *caused* the damage or injury. The legislature provided two methods by which this can be accomplished: (a) by proof of actual physical contact, or (b) by the claimant's description of the occurrence corroborated by eyewitness testimony. The eyewitness does not have to be a disinterested third party.

(Citations omitted; emphasis in original.) *Painter v. Continental Ins. Co.*, 233 Ga. App. 436, 438 (2) (504 SE2d 285) (1998).

In his complaint, Leslie averred that he lost control of his vehicle when he swerved to avoid a car that had pulled out in front of him as it entered the roadway from a shopping center parking lot. To corroborate his claim, Leslie submitted the recorded statement and the sworn affidavit and deposition testimony of an eyewitness, Reginald Fretty. On June 1, 2011, Fretty gave Leslie an affidavit, stating:

> On January 29, 2011, I was at a convenience store on [Highway] 138 in Fulton County, Georgia[,] when I observed a fairly new, dark colored

3

car, possibly American made, come from out of the shopping center lot across the street and cut off the driver of the green Mitsubishi[,] later identified as Tyrone Leslie. The car caused Mr. Leslie to [lose] control of his vehicle in an attempt to avoid a collision. The dark colored car did not stop as Mr. Leslie lost control, flipped several times and crashed.

In his August 5, 2011 recorded statement and in his February 14, 2012 deposition, Fretty was less certain of his observations. In his recorded statement, he told an insurance adjuster that he had seen a car pass in front of Leslie's car and cause the accident. When asked if that was his assumption or an observation, Fretty insisted: " No, . . . [the other car] caused the accident." Later, however, Fretty admitted that he was not sure exactly *how* the other car had caused the accident, stating "I'm not for sure if the car pulled out in front of [Leslie's car]." When asked specifically if he saw what the other car did immediately prior to the accident, he stated: "No." Similarly, in his deposition, Fretty stated that he saw "a car coming out [from a store] going that way (indicating) on 138. . . . And that's when I saw, you know, the car going and the vehicle flipping." Yet, when pressed on the details, Fretty admitted: "I didn't watch the whole thing[.]"

In both his deposition testimony and his recorded statement, Fretty is most consistent concerning these details: While he was pumping gas, he heard "brakes

squealing," a "banging" sound, and a "loud tumbling noise." When the sounds prompted him to look up, he saw Leslie's car flipping over as it left the roadway. By that time, the other car – the only other car on the road – was far enough down the road that Fretty could not tell what color it was. He speculated that the other car may have run a red light, may have been speeding, or may have pulled out in front of Leslie, but that he was not certain exactly how the other car caused the accident. Although Fretty's testimony varied as to how much he saw or recalled of the specific cause of the accident, he did not specifically repudiate his affidavit or his assertion that he saw another car and that the driver of that car caused the accident.

During his deposition, Fretty also acknowledged that Leslie was dating his wife's sister, Anna Godbold; and that he was friends with Anna's ex-husband, Johnnie Godbold.[3] The car Leslie wrecked was Anna's, but it was insured by Johnnie.

The court did not conduct a hearing on Doe's motion for summary judgment; rather, it ruled based upon the evidence that the parties had filed with the court. In its

---

[3] Although the social connections and the facts surrounding how Fretty came forward as a witness draw in to question his credibility, the eyewitness's credibility is not relevant to the threshold corroboration inquiry. See *Universal Security Ins. Co. v. Lowery*, 257 Ga. 363, 363-364 (359 SE2d 898) (1987) ("While the evidence here may be subject to credibility concerns, it is nonetheless sufficient. . . . If the General Assembly had intended to require corroboration by a disinterested third party, it could have so specified.").

summary judgment order, the court found that Fretty's affidavit contained corroborating statements "which would be sufficient to withstand the [m]otion[.]" The court concluded, however, that because the affidavit was a photocopy and not an original, it was "not sufficient in a summary judgment context to constitute evidence." After discounting the evidentiary value of the affidavit, the court entered judgment in Doe's favor.

1. For the reasons that follow, the court erred in disregarding the corroborating statements made in Fretty's affidavit. The affidavit was made a part of the record. Doe did not move to strike Fretty's affidavit or object to it on best evidence grounds, thereby waiving a best evidence objection[4]; rather he urged the court to disregard it because it contradicted portions of Fretty's deposition testimony, an objection the

---

[4] If the opposing party does not object to the admission of secondary evidence on best evidence grounds, the objection is waived. See *Wright v. Apartment Inv. and Mgmt. Co.*, 315 Ga. App. 587, 598 (4) (b) (726 SE2d 779) (2012) ("Appellants waived [the best evidence objection] by failing to interpose a timely contemporaneous objection when the challenged testimony was presented in court.") (citation omitted).

court overruled.[5] Given that no best evidence objection was made, the court erred in concluding that the affidavit had no evidentiary value for the following reasons.

A photocopy of a writing is considered secondary evidence. *All Risk Ins. Agency v. S. Bell Tel. & Tel. Co.*, 182 Ga. App. 190, 193-194 (5) (355 SE2d 465) (1987) ("Photostatic copies are ordinarily secondary evidence, which may not be admitted *over objection* without properly accounting for the original.") (emphasis supplied.) Under the best evidence rule as it existed at the time of the motion,[6]

---

[5] Doe urged the court to apply the rule set forth in *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 28 (1) (343 SE2d 680) (1986), to statements of non-party witnesses. The court correctly declined to do so. When a party has given contradictory testimony on the dispositive issue in the case, and when that party relies exclusively on that testimony in opposition to summary judgment, a court must "construe the contradictory testimony against him." Id. This rule has not been extended to apply to non-party witnesses. See *Patterson v. Bates*, 295 Ga. App. 141, 143-144 (671 SE2d 195) (2008) (physical precedent only).

[6] Georgia's new Evidence Code does not apply to this case, as Leslie argues, because the Code became effective on January 1, 2013, and applies "to any motion made or hearing or trial commenced on or after such date." Ga. L. 2011, p. 99, §§ 2, 101. The instant motion was made on November 26, 2012, and no hearing was requested or held. Because the motion was made prior to January 1, 2013, the court correctly applied the then-existing rules of evidence. As of January 1, 2013, the best evidence rule in former OCGA § 24-5-1 et seq. has been replaced by OCGA § 24-10-1001 et seq. Specifically, OCGA § 24-5-26 has been replaced by OCGA § 24-10-1003, which provides: "A duplicate shall be admissible to the same extent as an original unless: (1) A genuine question is raised as to the authenticity of the original; or (2) A circumstance exists where it would be unfair to admit the duplicate in lieu of the original."

primary evidence "is such as in itself does not indicate the existence of other and better proof," and "[s]econdary evidence is such as from necessity in some cases is substituted for stronger and better proof." Former OCGA § 24-5-1. Former OCGA § 24-5-2 provided that "to admit secondary evidence, it shall appear that the primary evidence for some sufficient cause is not accessible to the diligence of the party. This showing shall be made to the court, who shall hear the party himself on the question of diligence and the inaccessibility of the primary evidence." Thus, although original evidence is preferred over secondary evidence, *secondary evidence is not without value*. Because secondary evidence has value, the court may admit it over objection if the party offering the evidence satisfies the statutory criteria. *Baptiste v. State*, 288 Ga. 653, 655-657 (2) (706 SE2d 442) (2011) (finding that, under the best evidence rule, an officer's testimony regarding the contents of an affidavit was admissible when it was established that the original search warrants and affidavits had been lost). However, if the opposing party makes no best evidence objection to the admission of the secondary evidence, the objection is waived and the secondary evidence is before the factfinder. See *Wright v. Apartment Inv. and Mgmt. Co.*, 315 Ga. App. at 598 (4) (b). Because Fretty's affidavit had been made part of the record, because it had evidentiary value on the issue of corroboration in opposition to Doe's motion for

summary judgment, and because any objection to its admission on best evidence grounds had been waived, the court erred in disregarding it.

2. Doe argues that, even considering Fretty's affidavit as part of the record evidence, Fretty's contradictory account of the accident fails to provide the requisite corroboration. It is patent from the record that Fretty has given contradictory accounts of the extent to which he observed the accident. One may also infer from the record that Fretty is not a disinterested witness and that his credibility is in doubt. However, for purposes of OCGA § 33-7-11 (b) (2), neither Fretty's credibility[7] nor his contradictions[8] are relevant to whether his testimony provides sufficient corroboration. What matters is that Fretty gave testimony stating that he saw another car and that the driver of that car had caused the accident in a way that supports Leslie's account of how the accident occurred. Whether Fretty is to be believed remains for the jury to decide. Consequently, the state court erred in granting

---

[7] See, supra, footnote 3.

[8] Even if Fretty's testimony was self-contradictory, "it remains viable evidence, evidence which corroborates [Leslie's] contention as to the existence of a phantom vehicle which caused the incident." (Citation omitted.) *Painter v. Continental Ins. Co.*, 233 Ga. App. at 438 (1).

9

summary judgment to Doe on the basis that there was no corroboration under OCGA § 33-7-11 (b) (2).

*Judgment reversed. Phipps, C. J., concurs. Branch, J., concurs in judgment only.*